Stephen J. KASARSKY, Petitioner,

v.

MERIT SYSTEMS PROTECTION
BOARD, Respondent.

No. 02–3006.

United States Court of Appeals,
Federal Circuit.

July 17, 2002.

C.B. Weiser, from Marshall, TX, for petitioner.

Calvin M. Morrow, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were Lynn A. Jennings, General Counsel; and Martha B. Schneider, Deputy General Counsel.

Before LINN, Circuit Judge, PLAGER, Senior Circuit Judge, and PROST, Circuit Judge.

LINN, Circuit Judge.

Stephen J. Kasarsky seeks review of the final decision of the Merit Systems Protec- tion Board ("Board") that dismissed as untimely Kasarsky's petition for enforce- ment of a settlement agreement covering attorney fees. *Kasarsky v. United States Postal Serv.*, MSPB Docket No. AT-0752- 97-0483-C-1 (Initial Decision, June 29, 2001). Because the Board's decision is not in accordance with law, we reverse and remand.

## BACKGROUND

The present dispute centers around at- torney fees that the United States Postal Service ("the agency") agreed to pay as part of a settlement agreement with Ka- sarsky. Kasarsky was employed by the agency as a latent print analyst in Mem- phis, Tennessee. In March 1997, the agency placed Kasarsky on enforced leave. Kasarsky appealed the agency's decision to the Board, and the parties settled the dis- pute, making the settlement part of the record before the Board. Because the set- tlement resolved all matters before the Board, the Board's jurisdiction over the merits of the case was concluded. Howev- er, the Board retained jurisdiction for the purpose of considering any enforcement or compliance issues that may arise under the settlement agreement. *Kasarsky v. Unit- ed States Postal Serv.*, MSPB Docket No. AT-0752-97-0483-I-1 (June 26, 1997). Counsel for the agency reduced the settle- ment agreement to writing and forwarded it to Kasarsky's counsel for his approval. Kasarsky's counsel objected to the addi- tion of a paragraph that was not previously entered into the record before the Board and indicated that if the agreement were amended, Kasarsky would sign the revised agreement. On July 14, 1997, the agency's counsel sent Kasarsky's counsel a revised agreement removing the added paragraph to which Kasarsky objected.

After settling the merits of the employment action, Kasarsky filed a petition on September 3, 1997, for an award of attorney fees incurred in his appeal. The parties reached an oral agreement, and on October 27, 1997, made a separate attorney fees settlement part of the record at a hearing before the Board. Based on that record, Kasarsky's attorney agreed to dismiss the petition in return for the agency's agreement to pay an agreed fixed portion of the original claim. While there was a brief colloquy regarding when the payment might be expected, no definitive time for payment was demanded by Kasarsky's attorney or promised by the agency. As with the underlying settlement on the merits, the Board retained jurisdiction of the fee application for the limited purpose of considering any enforcement or compliance issues that may arise under the fee settlement agreement, *Kasarsky v. United States Postal Serv.*, MSPB Docket No. AT–0752–97–0483–A–1 (Oct. 27, 1997). The parties did not furnish a copy of a written fee agreement, and we find nothing in the record to indicate that the terms of the agreement agreed to orally at the hearing—and preserved on tape by the Board—were ever reduced to writing or subsequently altered in any way.

Four and one-half months later, on January 21, 1998, Kasarsky's attorney notified the agency that Kasarsky's attorney fees had not been paid. Counsel for the agency responded, noting that the "Postal Service remains willing to pay your attorney fees" but the "attorney fees have not been paid to date because we have not received the written [underlying merits settlement] agreement." Kasarsky did not immediately return the signed agreement. Nearly two years later, on December 19, 1999, Kasarsky executed the settlement agreement on the merits of the claim, and the agency received it on January 6, 2000. During the same time period, Kasarsky's attorney wrote the agency regarding an unrelated application for disability retirement benefits. Kasarsky's counsel asked that the agency process the previous settlement agreement.[1] In a January 26, 2000 letter, the agency acknowledged that it had received the executed agreement and would credit Kasarsky certain leave hours pursuant to the agreement. The agency letter makes no reference to attorney fees.

Exactly one year later on January 26, 2001, Kasarsky's counsel wrote the agency and reminded it of the agreement to pay attorney fees. The letter concluded asking the agency to "[p]lease advise upon receipt of this letter when payment of the attorney fees will be made." The agency did not respond to the letter. Less than one month later, on February 23, 2001, Kasarsky's counsel made a demand upon the agency for the attorney fees, threatening to file a petition for enforcement with the Board for breach of the settlement agreement if the payment was not made by March 5, 2001. The agency again did not respond to the request. On April 3, 2001,

1. The appellate record does not contain the letter from Kasarsky's counsel to the agency regarding the application for disability retirement benefits. However, the record does contain the agency's response to the letter. In its response letter, the agency notes that Kasarsky's counsel asks the agency to "process the settlement agreement in the matter of MSPB Docket No. AT–0752–97–0483–I–1." That docket number refers to the settlement of the merits of the initial agency action and not the separate settlement regarding the attorney fees. It is unclear whether Kasarsky's counsel mentioned the unpaid attorney fees in this letter.

Kasarsky filed a petition for enforcement of the settlement agreement seeking the agreed upon amount of fees plus interest. The agency responded, noting, among other things, that Kasarsky took nearly two years to return the executed settlement agreement. The agency asserted that the petition was untimely based on Kasarsky's unreasonable delay in returning the signed settlement agreement. The agency concluded by acknowledging for the first time that it would not pay the attorney fees.

The Board refused to enforce the agreement and dismissed the petition. On appeal, Kasarsky argues that the Board's decision was not supported by substantial evidence. Specifically, he argues that the agency agreed to pay the attorney fees and never indicated otherwise until after Kasarsky filed a petition for enforcement of the settlement agreement. The agency argues that the Board acted within its discretion when finding that the delay in filing the petition was unreasonable.

We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1).

## DISCUSSION

### A. Standard of Review

The standard of review in an appeal from a decision of the Board is strictly limited by statute. We may reverse a decision of the Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (2000); *Stearn v. Dep't of the Navy*, 280 F.3d 1376, 1380 (Fed.Cir. 2002).

### B. Analysis

This court has not addressed the time limit within which a petition for enforcement of a settlement agreement must be filed. Thus, we are faced with a question of first impression. In reaching its decision, the Board looked for guidance to an analogous regulation pertaining to enforcement of a final decision or order issued under the Board's appellate jurisdiction. *See* 5 C.F.R. § 1201.182(a) (2001). Under that regulation, a petition alleging a breach of a final decision "must be filed promptly" and "must describe specifically the reasons the petitioning party believes there is noncompliance." *Id.* The regulation further provides that "[a]ny petition for enforcement that is filed more than 30 days after the date of service of the agency's notice that it has complied must contain a statement and evidence showing good cause for the delay and a request for an extension of time for filing the petition." *Id.* Because an agency that enters into a settlement agreement is not required to serve a notice of compliance, these provisions are not directly applicable to petitions for enforcement of settlement agreements. *See, e.g., Bostick v. Dep't of Health and Human Serv.*, 63 M.S.P.R. 399, 401 (1994).

While the above regulation does not directly apply to settlement agreements, the underlying rationale for the regulation is nevertheless instructive in the enforcement of settlement agreements. A party's obligation to abide by the terms of a settlement agreement is no less than its obligation to follow the Board's own orders. In the context of complying with an order from the Board, 5 C.F.R. § 1201.181(a) mandates that the parties "cooperate fully with each other so that compliance with the Board's orders and decisions can be accomplished promptly and in accordance

with the laws, rules, and regulations that apply to individual cases." When an agency has complied with an order from the Board, the regulations require the agency to "inform the appellant promptly of the actions it takes to comply, and it must tell the appellant when it believes it has completed its compliance." 5 C.F.R. § 1201.181(b) (2001). The regulations also place a burden upon the appellant to "provide all necessary information that the agency requests in order to comply, and, if not otherwise notified, he or she should, from time to time, ask the agency about its progress." *Id.* The purpose of those provisions is to avoid unnecessary petitions for enforcement. *Id.*

The timeliness of a petition for enforcement of a final Board decision is measured against the date that the agency notifies the appellant of its compliance. Because the agency is not required to serve a notice of compliance in a settlement context, the timeliness of a petition for enforcement of a settlement agreement must be measured against a different standard. The Board, in *Adamcik v. United States Postal Service*, 48 M.S.P.R. 493 (1991), recognized this and adopted a rule governing this issue. In that case, the Board held that an enforcement petition alleging a breach of a settlement agreement which the Board retained the authority to enforce must be filed "within a reasonable amount of time of the date of the alleged breach of the agreement, taking into account the date of the petitioning party's knowledge of the alleged breach." *Id.* at 496. The Board further noted that "[t]he reasonableness of the time period depends on the particular circumstances of the case." *Id.* The Board, in *Adamcik*, based its reasoning, in part, on the underlying rationale found in the regulations relating to enforcement of the Board's orders. *Id.* Because the rule

formulated in *Adamcik* draws reasonable parallels to and is consistent with the underlying rationale found in regulations relating to enforcement of Board orders, we find the reasoning expressed and the conclusions drawn by the Board in *Adamcik* to be sound.

The limitations period for filing a petition to enforce an order of the Board is triggered by the agency's notice of compliance. Because a party who settles with an agency is entitled to expect that the agency will comply with the terms of the agreement until the party has reason to believe otherwise, it is reasonable to conclude that the limitations period for filing a petition to enforce a settlement agreement should be triggered when the party alleging a breach of the settlement agreement first becomes aware of such breach. Thus, we hold that an enforcement petition alleging a breach of a settlement agreement must be filed within a reasonable amount of time of the date the petitioning party becomes aware of a breach of the agreement. The reasonableness of the time period depends on the circumstances of each case. A petition for enforcement is presumed to be timely and subject to the jurisdiction of the Board until challenged, either by the Board on its own initiative or by the agency. As a result of such a challenge, if on its face the petition is untimely, then the burden is on the petitioner to show facts establishing why the petition is not untimely.

Here, it is undisputed that the agency and Kasarsky reached a fee agreement whereby the agency would pay a fixed sum in exchange for dismissal of the fee petition. It is also undisputed that the agency did not pay Kasarsky the agreed amount. Under the rule set forth above, we must ascertain the following: Was there a

breach of the settlement agreement? If there was a breach, when did the breach occur, and when did Kasarsky become aware of the breach? Finally, once Kasarsky became aware of the breach, did he thereafter file a petition for enforcement within a reasonable amount of time?

▮ Disputes involving settlement agreements are governed by contract principles. *See Tiburzi v. Dep't of Justice,* 269 F.3d 1346, 1351 (Fed.Cir.2001) ("It is 'axiomatic that a settlement agreement is a contract.'") (quoting *Greco v. Dep't of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988)). The contract principles involved here relate to when a contract to pay money— with no date of performance specified—is breached. A breach of contract is simply the non-performance of a contractual duty. *See Franconia Assocs. v. United States,* 536 U.S. ——, 122 S.Ct. 1993, 2002, 153 L.Ed.2d 132 (2002) (citing *Restatement (Second) of Contracts* § 235(2) (1979) (hereinafter Restatement); J. Murray, *Contracts* § 206, p. 417 (2d rev. ed.1974)); *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.,* 532 U.S. 588, 596–97, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001) (describing a breach of contract as "a simple failure to perform"). When no time for performance is specified and one party performs, the non-performing party is not in breach of the contract until either (1) the performing party demands performance within a reasonable amount of time, and the other party still fails to perform within the time specified; or (2) the non-performing party repudiates the contract, and the performing party chooses to treat the repudiation as a breach. *See Roehm v. Horst,* 178 U.S. 1, 13, 20 S.Ct. 780, 44 L.Ed. 953 (1900) (repudiation gives the promisee the right of electing either to wait until the time for the promisor's per-

formance has arrived or to act upon the renunciation and treat it as a final assertion by the promisor that he is no longer bound by the contract). Here, the parties agree that at some point, the agency's non-performance with respect to the fee agreement amounted to a breach. The dispute centers around when that breach occurred.

▮ Kasarsky argues that the agency did not breach the agreement until it advised Kasarsky that it would not pay the attorney fees. The first express indication that the agency would not pay the attorney fees came on May 4, 2001, when the agency filed its response to Kasarsky's petition for enforcement. The evidence of record reflects that Kasarsky's earliest acknowledgement of a breach was March 5, 2001— the deadline Kasarsky set for payment of his attorney fees before he would file "a petition for enforcement ... for breach of settlement." Kasarsky filed his petition for enforcement less than thirty days after his March 5, 2001 deadline, and the Board expressly found that "Kasarsky did file his petition within a reasonable time of the breach of the agreement." *Kasarsky v. United States Postal Serv.,* MSPB Docket No. AT–0752–97–0483–C–1 (June 29, 2001), slip op. at 3.

Because Kasarsky claimed not to have known about the breach until March 5, 2001, at the earliest, the agency had to show that its breach actually occurred at an earlier date. However, until Kasarsky's January 26, 2001 inquiry into the status of his attorney fees was met by the agency's silence, there is no evidence of record to suggest that the agency did not fully intend to comply with the terms of the agreement. In fact, the most recent evidence of record indicates that the agency "remain[ed] willing to pay [Kasarsky's] attorney fees."

The agency argues that Kasarsky's counsel was informed by the agency in January 2000 that the signed settlement agreement had been received and that Kasarsky's counsel became aware not long thereafter that the agency had not promptly responded with an attorney fees payment and continued its inaction throughout the remainder of the year. Thus, the agency alleges that following Kasarsky's performance of his end of the contract in January 2000, the agency itself breached the settlement agreement not long thereafter. We are, therefore, faced with the unusual situation in which the agency contends that it breached the contract earlier than asserted by petitioner to avoid performance of its end of the bargain. The only evidence of record that supports the agency's position that it breached the agreement earlier than alleged is that it remained silent following Kasarsky's submission of the underlying merits agreement. However, nothing in the record reflects that the fee agreement conditioned payment on receipt of the underlying merits settlement agreement or specified a time for payment. The mere delay on the part of the agency did not signal a repudiation in this case in which the agency not only acknowledged its obligation to pay in the fee agreement but subsequently reconfirmed its obligation under the agreement in its letter. *See Franconia,* — U.S. at ——, 122 S.Ct. at 2002 ("repudiation entails a statement or 'voluntary affirmative act' indicating that the promisor will commit a breach when performance becomes due") (citing *Restatement* § 250); 4A Corbin, *Contracts* § 959, p. 855 (1951). The agency's silence did not amount to a "statement or voluntary affirmative act." Thus, its delay in paying the attorney fees could not amount to a breach of the fee agreement, until it communicated its refusal to pay. *Id.*

The agency contends that: (1) Kasarsky was dilatory in waiting two years to send in the signed agreement; (2) the late filing thereof excused performance of the fee agreement by the agency; and (3) the agency's position should have been appreciated by Kasarsky not long after the signed agreement was filed simply by virtue of the non-payment. However, the agency never set a deadline or in any way communicated to Kasarsky that the failure to submit the signed merits agreement within a particular time would result in forfeiture of the agreed fee under the separate fee agreement. To the contrary, the agency took it upon itself to withhold payment and now seeks to excuse payment altogether. By not setting a deadline for performance, the agency's position finds little support. *Cf. Alonzo v. Dep't of the Air Force,* 4 MSPB 262, 4 M.S.P.R. 180, 184 (1980) (listing whether party was notified of a time limit or otherwise aware of it as a factor to determine reasonableness of delay when filing petition for review before the Board).

Our decision is supported by the Supreme Court's recent decision in *Franconia,* in which the Court addressed the timeliness of breach of contract claims against the government under the Tucker Act, 28 U.S.C. § 1491. There, petitioners were property owners who participated in a federal program to promote the development of affordable rental housing. *Franconia,* — U.S. at ——, 122 S.Ct. at 1996. Under the program, the Farmers Home Administration issued the property owners low-interest mortgage loans in exchange for an agreement to devote the properties to low-income housing and to abide by related restrictions during the life of the loans. *Id.* The promissory notes executed by petitioners authorized prepayment at any time which would thereby release the

owners from any property use restrictions. *Id.* Congress later enacted a statute that placed permanent restraints upon the prepayment of the loans. *Id.* at 1997. The petitioners alleged that the statutory restriction on prepayment amounted to a taking of their property in violation of the Fifth Amendment. The government contended that if the statute were such a taking, then the cause of action for breach of the loan agreement accrued when the statute was enacted, and the petitioners' suits were therefore barred by the limitations period. Following general principles of contract law, the Supreme Court held that, at most, the statute passed by Congress amounted to a repudiation of the loan agreement. *Id.* The Court noted that when one party to an agreement repudiates, the other party has the option of either waiting until performance is due or treating the repudiation as a present breach. *Id.* Thus, the government's repudiation of the loan agreement did not become a breach of contract until either the property owners treated it as a breach, or when the property owners attempted to prepay but were refused. *Id.*

Just as the passing of the statute in *Franconia* did not amount to a breach of contract without further action by the government, the agency's silence toward Kasarsky did not amount to a breach of the fee agreement triggering the limitations period for filing a petition for enforcement. While this case differs from *Franconia* because the fee agreement does not specify a time for performance, the Court's decision reinforces our holding that a breach did not occur until Kasarsky was aware of the agency's refusal to pay. The agency's silence and delay under the facts of the present case was not a breach of the agreement to pay. The petition for enforcement, filed within thirty days of the demand date which triggered the breach, was timely on its face. The Board erred as a matter of law in failing to recognize when the breach occurred. *Accord id.*

Certainly, the government is entitled to resolve disputes promptly and is not obligated to retain files open indefinitely. But the rule we adopt today does not leave the government subject to the whims or procrastinations of other parties to settlement agreements. The government is free to take steps to conclude open matters at any time by simply taking whatever action is called for in the agreement or by advising the contracting party that the government considers its obligations to have been satisfied. This is analogous to and no more burdensome than the obligation the government bears in the context of the enforcement of an order or decision to provide a notice of compliance before the duty to timely proceed with the filing of a petition for enforcement is triggered. In this case, the agency did neither. To the contrary, it sent Kasarsky a letter dated January 21, 1998, informing him that (1) the agency was waiting for the signed underlying merits agreement—a condition not contained in the actual fee agreement, and (2) the agency remained willing to pay once that document was received. That letter did not specify a time for performance.

To be sure, Kasarsky bears some responsibility for letting this matter languish and will be hard pressed to justify any entitlement of interest on the unpaid fees. But the agency's delay cannot be said to signal a breach in the face of both the agreement itself and the subsequent reaffirmation of its obligation to pay. The Board's conclusion to the contrary is unsupported by any evidence and is not in accordance with law. The agency never took steps to bring this to closure, to impose a deadline, or to suggest that Kasar-

sky's dilatory conduct would place the agreement in jeopardy. It was the agency's delay in failing to remit the payment it acknowledged it owed that kept this issue open, and the agency should not be excused from performance simply because it failed to perform.

To the extent that the Board found that Kasarsky "did file his petition within a reasonable time of the breach of the agreement" but "failed to establish his delay was reasonable," we hold that the Board's reasoning was obtained without procedures required by law. There is only one test for the reasonableness of the timing of a petition for enforcement. That test asks whether the aggrieved party filed a petition for enforcement within a reasonable time of the date of his awareness of a breach of the settlement agreement. Once the Board concluded that Kasarsky filed his petition within a reasonable amount of time, the inquiry should have ended.

For the foregoing reasons, we reverse the decision and remand the petition to the Board to determine whether Kasarsky's counsel is entitled to interest in addition to the agreed upon attorney fees.

*REVERSED AND REMANDED.*