**Joseph R. POETT, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 02–3204.

United States Court of Appeals, Federal Circuit.

March 18, 2004.

---

Joan Harvill, International Law Center of D.C., of Arlington, VA, argued for petitioner.

Jeffrey A. Gauger, Attorney, Office of the General Counsel, United States Merit Systems Protection Board, of Washington, DC, argued for respondent. With him on the brief were Martha B. Schneider, General Counsel; and Calvin M. Morrow, Reviewing Attorney. Of counsel was Stephanie Conley, Attorney.

Before NEWMAN, MICHEL, and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Joseph Poett appeals from the final decision of the Merit Systems Protection Board ("Board") dismissing his petition for enforcement of an October 18, 1995 settlement agreement as untimely because the Administrative Judge ("AJ") held the petition was not filed within a reasonable time after he learned of the alleged breach. *Poett v. Dep't of Agric.*, No. SL0752950449–C–3, 2002 WL 235695 (Feb. 12, 2002). The AJ found, based on Mr. Poett's first letter containing an accusation of breach, that he knew of the alleged breach at least as early as January 10, 2000—14 months before he filed his petition for enforcement. We conclude that, in the context of all the record evidence of the information then available to Mr. Poett, the determination, based solely on his letter, that he had actual knowledge of the alleged breach at least as early as the date of his January 10, 2000 letter, is not supported by substantial evidence. Accordingly, the dismissal was error. We therefore reverse the decision of the Board dismissing the petition and remand for further proceedings.

## BACKGROUND

The following facts are undisputed:

In August 1995, the United States Department of Agriculture ("USDA") office in Missouri suspended Mr. Poett for 28 days without pay, and Mr. Poett appealed to the Board. The parties settled the dispute with an agreement that Mr. Poett resign. In exchange, the USDA agreed to refer all inquiries or requests for job references concerning Mr. Poett to the Personnel Operations Branch ("POB") in Minneapolis, Minnesota, and further—that information provided in connection with such inquiries would be of a neutral nature.[1] The settlement agreement did not specify a time limit for filing a petition for enforcement. The Board dismissed the appeal as moot after the settlement agreement was executed and entered into the appeal record.

After his resignation, Mr. Poett unsuccessfully looked for new work and suspected the USDA was not giving him neutral job references. After various employment rejections, Mr. Poett asked interviewers if his references were good, and the interviewers responded that the process had not gone as far as reference checking. In July 1999, Mr. Poett interviewed with Janice Barrier for a position at the Occupational Safety and Health Administration ("OSHA"). Because of tension between Mr. Poett and Sydney Griffith, it was Mr. Poett's practice not to tell prospective employers Ms. Griffith had been his supervisor. However, OSHA's application process required Mr. Poett to provide a copy

---

**1.** The sixth clause of the settlement agreement states:

The Agency agrees that inquiries or job references regarding the APPELLANT'S work performance, reason for resignation, or other employment matters will be referred to the AGENCY Personnel Operations Branch in Minneapolis, Minnesota. Information provided in connection with such inquiries will be of a "neutral" nature, and limited to employment data reflected in the OPF and the Employee Performance Folder (Fully Successful rating).

of his final performance appraisal from the USDA, a document that listed Sydney Griffith as his supervisor. Mr. Poett called Ms. Barrier in August 1999, and, after learning he did not get the job, asked how his references "were holding up." Ms. Barrier replied "I do not wish to comment." Mr. Poett then asked whether Ms. Barrier had checked any of his job references; Ms. Barrier again replied, "I do not wish to comment." Mr. Poett later testified that at this point he "smelled a rat."

In late summer or early autumn 1999, Mr. Poett sent a letter to the Office of Special Counsel ("OSC") asking for an investigation into his suspicion that he had been given a bad job reference. In September 1999, the OSC began an investigation of Mr. Poett's claims. On January 10, 2000, Mr. Poett sent a letter to Joan Carlson at the POB which included the statement, "I acknowledge the speedy reaction I welcomed from your office in the wake of a sour job recommendation by fsis supervisor Sydney Griffith." In May 2000, at the request of the OSC, Mr. Poett filed a formal whistleblower complaint with the OSC stating, "Sydney Griffith gave me a bad job reference which kept me from getting the job." On February 12, 2001, Mr. Poett received a letter dated February 5, 2001 from Melissa Ehlinger at the OSC rejecting his claims as not actionable under the Whistleblower Protection Act and advising that the OSC investigation was closed. The letter also said, "Unfortunately, there is no information indicating Ms. Griffith did anything other than give her opinion as to your job performance." On March 15, 2001, 31 days after receiving the OSC letter, Mr. Poett filed with the Board a petition for enforcement of the settlement agreement.

On July 10, 2001, the day before the scheduled hearing, the USDA filed a motion to dismiss the petition for enforcement for want of jurisdiction. Trial on the merits proceeded, and Mr. Poett appeared *pro se*. On October 9, 2001, the AJ issued a decision, not on the merits, but on the motion to dismiss. The AJ found that Mr. Poett knew of the alleged breach at least as early as January 10, 2000, and that a delay in filing until March 15, 2001 was unreasonable. He therefore dismissed the petition for enforcement. The full Board denied Mr. Poett's petition for review making the AJ's decision the final decision of the Board.

## DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (granting the Court of Appeals for the Federal Circuit jurisdiction over "an appeal from a final order or final decision of the Merit Systems Protection Board"). In a case such as this, the Board's decision must be reversed if it rests on findings "unsupported by substantial evidence." 5 U.S.C. § 7703(c)(3).

A petition for enforcement of a final decision or order issued under the Board's appellate jurisdiction must be filed "promptly." 5 C.F.R. § 1201.182(a). "Any petition for enforcement that is filed more than 30 days after the date of service of the agency's notice that it has complied must contain a statement and evidence showing good cause for the delay and a request for an extension of time for filing the petition." *Id.* A petitioner who does not receive written notice from the agency because there is no compliance to report is not, however, required to show good cause. *See Shamblen v. United States Postal Serv.*, 54 M.S.P.R. 55, 57 (1992). In such a case, however, a petition for enforcement must still be filed within a reasonable time of the date of the alleged breach of the agreement, taking into consideration the date of the petitioning party's knowledge of the alleged breach. *Adamcik v. United*

*States Postal Serv.,* 48 M.S.P.R. 493, 496 (1991).

▮ Our own case law emphasizes actual knowledge. *See Kasarsky v. Merit Sys. Prot. Bd.,* 296 F.3d 1331, 1335 (Fed.Cir. 2002). "[A]n enforcement petition alleging a breach of a settlement agreement must be filed within a reasonable amount of time of the date the petitioning party becomes *aware of a breach* of the agreement." *Id.* (emphasis added). "Because a party who settles with an agency is entitled to expect that the agency will comply with the terms of the agreement until the party has reason to believe otherwise, it is reasonable to conclude that the limitations period for filing a petition to enforce a settlement agreement should be triggered when the party alleging a breach of the settlement agreement first becomes aware of such breach." *Id.*

▮ As of January 10, 2000, Mr. Poett knew only three pertinent facts: 1) Sydney Griffith's name was available to Janice Barrier at OSHA because it was listed on a performance evaluation he was required to provide during the interview process; 2) he was not hired for the position at OSHA; and 3) Janice Barrier responded to Mr. Poett's questions about how his references "were holding up" and whether she had checked his references by replying, "I do not wish to comment." From these facts, Mr. Poett made a double inference: that Janice Barrier had spoken to Sydney Griffith and, additionally, that Griffith had given him a bad job reference. These suspicions led Mr. Poett in the early Fall of 1999 to request an investigation by the OSC. However, he referenced the suspected breach in his letter of January 2000 to Joan Carlson and his OSC complaint of May 2000 as an established fact. Why Mr. Poett used this characterization is unclear. Mr. Poett offered an explanation but the AJ rejected it and merely relied on a literal reading of the two documents. The AJ concluded from these writings *alone* that Mr. Poett was aware of the alleged breach at least as early as January 10, 2000. The AJ said, "Notwithstanding the appellant's claim that prior to February 2001 he only suspected Ms. Griffith had given him a bad job reference, the documentary record—consisting of letters and complaints written by the appellant himself—shows he knew of the breach at least as early as January 10, 2000." *Poett v. Dep't of Agric.,* slip op. at 5. We disagree.

▮ In the context of all the record facts, we conclude that the statements made by Mr. Poett resulted from unsubstantiated speculation, not actual knowledge. We therefore hold that a petitioner has a reasonable time to file a petition for enforcement once he has actual knowledge of a specific act that constitutes a breach, not merely an unsubstantiated suspicion.

Case law cited by the parties is instructive on this point even though the exact facts are different. In *Kasarsky,* the United States Postal Service ("USPS") agreed to pay Kasarsky's attorney fees stemming from an appeal over an enforced leave of absence. 296 F.3d at 1335. The parties reached an agreement on the merits of the case and made the agreement part of the record before the Board in June 1997. *Id.* at 1332. The USPS reduced the agreement to writing, and, after deleting a paragraph to which Kasarsky objected, sent him a final, presumably signed, version on July 14, 1997. *Id.* In September 1997, Kasarsky filed a separate petition for attorney fees, and the USPS orally agreed to pay and made the agreement part of the record at a hearing before the Board in October 1997. *Id.* at 1333. In December 1999, two and a half years after the USPS sent Kasarsky the final version of the settlement agreement on the merits, Kasarsky finally executed

the agreement. *Id.* The USPS received the fully executed agreement on January 6, 2000. *Id.* In a January 26, 2000 letter, the USPS acknowledged that it had received the executed agreement on the merits and would credit Kasarsky certain leave hours pursuant to the agreement, but made no mention of attorney fees. *Id.* Kasarsky's attorney sent a letter on January 26, 2001, exactly a year later, reminding the USPS of its obligation to pay attorney fees, and sent another letter on February 23, 2001 demanding performance and setting a deadline for payment of March 5, 2001. *Id.* When the USPS did not respond to the letters, Kasarsky filed a petition for enforcement on April 3, 2001. *Id.* The USPS contended that Kasarsky should have known of the breach not long after he was informed in January 2000 that the USPS had received the signed settlement agreement and thereafter the USPS did not respond promptly with an attorney fees payment. *Id.* at 1337. As February 2000 or so was the time of breach, reasoned the USPS, then Kasarsky had unreasonably delayed filing a petition for enforcement until April 2001 and dismissal for untimeliness was proper. *Id.* The Board dismissed Kasarsky's petition for enforcement of the settlement agreement as untimely filed. *See id.* at 1332.

We reversed. Applying general contract principles for determining when a breach occurred, we found that the USPS did not breach the fee agreement, which lacked a payment date, until Kasarsky made a demand for payment by a date certain and the USPS failed to pay by that date. *Id.* at 1336. Thus, Kasarsky was not charged with actual knowledge of a breach as of the date he first suspected the breach; rather, he was found to have actual knowledge only after he set a firm deadline for performance and the USPS failed to meet the deadline. *Id.* Indeed, we held the USPS' year-long silence toward Kasarsky did not amount to a breach of the fee agreement triggering the reasonable time period for filing a petition for enforcement. *Id.* at 1338. Only when the deadline for performance passed without payment did Kasarsky have actual knowledge of the breach, and thus, from that date, the "reasonable time" period for filing a petition for enforcement began to run. Similarly, Mr. Poett cannot be charged with actual knowledge before he had reliable information of a specific act that breached, apart from his own conjecture. This information came in the February 2001 OSC letter.

In *Adamcik,* in contrast, the USPS and Adamcik, an employee who had been demoted, resolved an appeal over the demotion with a settlement agreement enforceable by the Board. The agreement provided that Adamcik's demotion would be modified to a 7–day suspension, that she would be returned to her former position, and that the USPS would not retaliate against her for appealing to the Board. *Adamcik,* 48 M.S.P.R. at 495. Adamcik alleged the USPS breached the agreement by: 1) failing to remove from her personnel file a reference dated December 21, 1989, referring to the demotion action; 2) returning her to a position on August 12, 1989, not at the level of her former position; and 3) retaliating against her by reassigning her to a different duty station on December 12, 1989. *Id.* at 497. Adamcik did not file a petition for enforcement, however, until June 7, 1990, ten months after she became aware of a breach. *Id.* The Board remanded for a determination of whether the appellant's petition for enforcement was filed within a reasonable time. Apparently, the AJ had not considered timeliness, but the Board viewed it as jurisdictional.

In contrast with the agreement in the present case, the settlement agreement in *Adamcik* required various affirmative acts by the USPS, and Adamcik was personally affected by those acts. Adamcik would have had immediate, actual knowledge of an alleged breach of the settlement agreement the very day in August 1989 when she appeared for work and learned that her new position was not the pay and grade of her former position. Mr. Poett, however, would not have received such actual knowledge of a breach of his settlement agreement because the duty that agreement imposed on the USDA was to refrain from certain conduct toward third parties. Unlike the petitioner in *Adamcik*, Mr. Poett would not necessarily have been aware of a breach if the USDA had not referred prospective employers' inquiries about him to the POB or provided prospective employers non-neutral information. Such a breach would most likely occur unbeknownst to Mr. Poett.

The AJ, however, based his decision primarily on *Chudson v. Environmental Protection Agency*, 71 M.S.P.R. 115, 118–19 (1996), citing it for the following proposition: "[T]he Board has held that an appellant's decision to seek enforcement of an alleged breach of a settlement agreement through OSC, rather than through the Board, does not reflect ordinary prudence or due diligence." In its brief before us, the government also relies primarily on this case, stating: "The facts of the instant case are indistinguishable from those in *Chudson*." In reality, the facts of *Chudson* are critically different. In *Chudson*, the petitioner conceded he knew specifically of the alleged breach upon receiving an August 11, 1994 response to his Freedom of Information Act request. *Id.* at 118. He then filed a whistleblower complaint with the OSC on August 31, 1994. *Id.* He filed his petition for enforcement nearly one year later. *Id.* In contrast with the

present case, Chudson indisputably knew of the breach before filing a complaint with the OSC, and no analysis of whether he had actual knowledge or only suspicion was necessary. In other words, the question in *Chudson* was whether an intervening filing with the OSC with actual knowledge of the breach would prevent a delay in filing a petition for enforcement of nearly one year from being unreasonable. The question in the present case, however, is when the time for filing the petition for enforcement started to run, i.e., when the petitioner first had actual knowledge of the breach.

After hearing Janice Barrier's answers of, "I do not wish to comment," Mr. Poett had information that led him to suspect some sort of breach had occurred, but he had no specific information indicating a particular breach. Under the circumstances, it was proper for Mr. Poett to wait to file a petition for enforcement with the Board until he received the specific OSC information regarding an improper job reference given by Ms. Griffith. Indeed, until he knew Ms. Griffith rather than someone at the POB spoke to Ms. Barrier, he could not have actual knowledge of a breach. Under the agreement, only officials at the POB could respond to performance inquiries by prospective employers. Thus, it was a breach for Ms. Griffith to say anything about Mr. Poett to Ms. Barrier, not merely something nonneutral. But Mr. Poett's first specific information indicating Ms. Griffith spoke to Ms. Barrier was in the February 2001 letter from the OSC so reporting. Mr. Poett filed his petition for enforcement about one month later.

Chudson was viewed as having elected to proceed before the OSC rather than the Board when he could have done either. Mr. Poett, however, made no such election because he filed with the Board as soon as

he properly could. Nor was his effort to get the OSC to substantiate his suspicions an indication of a lack of diligence as in *Chudson.* The earliest specific information showing a breach found in the record is the February 5, 2001 letter Mr. Poett received from the OSC—he filed a petition for enforcement within a month, certainly a reasonable time after receiving this letter.

Before the AJ, Mr. Poett testified to his state of knowledge saying he "had a strong suspicion and conviction . . . a gut feeling." He further said this was "a hunch" and that his evidence of a breach of the settlement agreement was only Janice Barrier's answers of "I do not wish to comment" and the fact that she was one of the few potential employers who knew Sydney Griffith had been his supervisor. In finding Mr. Poett knew of the alleged breach as of January 10, 2000, the AJ did not explicitly address his credibility, but simply ruled that the documentary evidence contradicted this testimony. The documentary evidence cited by the AJ for charging Mr. Poett with knowledge as of January 10, 2000 consisted of Mr. Poett's January 10, 2000 letter to Joan Carlson and Poett's May 2000 complaint to the OSC. The government offered no evidence showing Mr. Poett learned *any* new information between his August 1999 telephone conversation with Ms. Barrier and the February 2001 letter from the OSC. The AJ's decision to reject Mr. Poett's explanation of his state of knowledge, in the absence of a further showing by the government of specific information received by Mr. Poett, was not supported by substantial evidence.

■ In *Kasarsky,* the petitioner became aware of the alleged breach as it occurred and then filed a petition for enforcement within a month. Conversely, in this case, the alleged breach occurred in July 1999,

but Mr. Poett first received actual knowledge of the breach in February 2001. When a gap in time exists between the occurrence of a breach and when a petitioner first receives knowledge of the breach, we hold the "reasonable time" for filing a petition for enforcement runs from the date the petitioner learns of the breach.

■ The "reasonable time" requirement for filing a petition for enforcement of a settlement agreement is conceptually similar to the defense of laches. To invoke laches, a defendant has to show two facts: 1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time he knew or reasonably should have known of his claim against the defendant; and 2) the delay operated to the prejudice or injury of the defendant. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1032 (Fed.Cir. 1992) (*en banc* ). In either case, unreasonable delay is needed. In a case where a party agrees to abstain from certain conduct, it is proper to require actual knowledge of the alleged breach of that agreement before starting the reasonable time period for filing a petition for enforcement of the agreement. Under this standard, Mr. Poett did not delay for an unreasonable period—14 months as found by the AJ, but only a month. Therefore, his filing was indeed within a reasonable time.

## CONCLUSION

In the context of all the facts, we conclude the AJ's finding that Mr. Poett knew of the alleged breach as of January 2000 was unsupported by substantial evidence and, therefore, that the Board erred in ruling that Mr. Poett's March 2001 petition for enforcement was untimely filed. Ac-

cordingly, we reverse the dismissal of the petition as untimely and remand the case for an AJ to address whether the settlement agreement was materially breached, and, if so, what remedy is appropriate.

*REVERSED AND REMANDED.*

COSTS

No costs.