# United States Court of Appeals for the Federal Circuit

_____

**JOSEPH R. GALLEGOS,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

_____

2016-2120

_____

Petition for review of the Merit Systems Protection Board in No. DA-0752-01-0157-C-1.

_____

Decided: December 27, 2016

_____

JOSEPH R. GALLEGOS, Fayetteville, NC, pro se.

SARA B. REARDEN, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK.

_____

Before NEWMAN, CLEVENGER, and DYK, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK, in
which CLEVENGER, *Circuit Judge*, joins.

Dissenting Opinion filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge*.

Joseph R. Gallegos petitions for review of a final order
of the Merit Systems Protection Board ("Board").  The
Board dismissed as untimely Gallegos's petition for en-
forcement of the settlement agreement that resolved his
adverse action appeal in *Gallegos v. Dep't of Health &
Human Services*, Docket No. DA-0752-01-0157-I-1 (MSPB
Mar. 23, 2001).  The Board also found that Gallegos did
not establish good cause for untimely filing.  We *affirm*.

## BACKGROUND

Gallegos was employed by the Food and Drug Admin-
istration ("Agency") as a Consumer Safety Officer during
the period from 1980 to 2000.  He was removed on No-
vember 25, 2000, on the ground that he refused to accept
a job reassignment that required relocation.  On Decem-
ber 14, 2000, Gallegos filed an appeal with the Board to
challenge his removal by the Agency.  In March 2001,
Gallegos and the Agency entered into a settlement
agreement ("Agreement").  The Agreement provided that
Gallegos would withdraw his appeal with prejudice, and
that the Agency would expunge from Gallegos's Official
Personnel File ("OPF") and the Standard Form ("SF-50")
any indication that he was removed from his position.
Instead, a revised SF-50 would indicate "a voluntary
resignation."  J.A. 120.  The Agreement also stated that
Gallegos "will be provided with a copy of the revised SF-
50 for inspection, and [Gallegos] will notify the Agency of
any concerns within 15-days of receipt of the form."  *Id.*

The Board approved this settlement and noted that
"[a]ny petition for enforcement [of the Agreement] must
be filed within a reasonable period of time after you
discover the asserted noncompliance."  *Gallegos v. Dep't of*

*Health and Human Servs.*, Docket No. DA-0752-01-0157-I-1 (MSPB Mar. 23, 2001). This notice was consistent with 5 C.F.R. § 1201.182(a), which provides that a petition for enforcement of a settlement agreement must be filed "promptly."

In October 2014, almost 14 years after the settlement, Gallegos alleges that he discovered a breach of the Agreement because his revised SF-50 indicated "Resignation ILIA," which stands for "in lieu of involuntary action." Gallegos argues that the use of this acronym violated the Agreement. He alleged that he had misplaced the settlement agreement, and he was only able to confirm the breach by obtaining a copy he received in response to a Freedom of Information Act request on April 14, 2015.

On June 15, 2015, Gallegos filed a petition for enforcement of the settlement agreement with the Board. The administrative judge ("AJ") noted that Gallegos's petition appeared facially untimely. The AJ had ordered Gallegos to address the timeliness issue and to provide information as to when "he learned that his SF-50 regarding his resignation stated[] 'Resignation ILIA.'" J.A. 12. Gallegos responded that he suspected the Agreement had been breached in October 2014 because of the ILIA designation, but that he had been using the SF-50 at issue since 2001. The AJ concluded that Gallegos had received the revised SF-50 indicating "Resignation ILIA" 14 years ago, and determined that the petition was untimely because Gallegos did not establish good cause for the delay. *Gallegos v. Dep't of Health & Human Servs.*, Docket No. DA-0752-01-0157-C-1 (MSPB Sept. 17, 2015).

On review, the Board affirmed the AJ's finding that Gallegos failed to establish that his petition for enforcement was timely filed. *Gallegos v. Dep't of Health & Human Servs.*, Docket No. DA-0752-01-0157-C-1 (MSPB Mar. 24, 2016). The Board also noted that "[t]o establish

good cause for the untimely filing of an appeal, a party must show that he exercised due diligence . . . . We find the appellant's failure to maintain a copy of the parties' settlement agreement, as well as his apparent failure to compare the SF-50 with the settlement agreement at the time he received the documents to be less than diligent." J.A. 6.

Gallegos petitions for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

In his petition for review, Gallegos primarily argues that the timeliness issue should be resolved in his favor because the Agency engaged in fraud. We first address the standard for timeliness and then address Gallegos's fraud allegations.

A petition for enforcement of a settlement agreement must be filed "promptly." 5 C.F.R. § 1201.182(a). We have interpreted "promptly" to mean within a "reasonable time." *Poett v. MSPB*, 360 F.3d 1377, 1381 (Fed. Cir. 2004). "The 'reasonable time' requirement for filing a petition for enforcement of a settlement agreement is conceptually similar to the defense of laches . . . [where] the plaintiff [cannot] delay[] filing suit for an unreasonable and inexcusable length of time from the time he knew or reasonably should have known of his claim . . . ." *Id.* at 1384. Here, Gallegos stated that he first noticed the notation "Resignation ILIA" in October 2014, but also that he had been using the SF-50 in question since 2001. Gallegos did not dispute that he had also received a copy

of the Agreement when it was executed (though he later lost that copy).

Given that the Agreement specifically provided that Gallegos "will notify the Agency of any concerns within 15-days of receipt of the [revised SF-50] form," we find no error in the Board's conclusion that Gallegos did not exercise due diligence. "[W]hether the regulatory time limit for an appeal should be waived based upon a showing of good cause is a matter committed to the Board's discretion and this court will not substitute its own judgment for that of the Board." *Mendoza v. MSPB*, 966 F.2d 650, 653 (Fed. Cir. 1992) (en banc).

Gallegos alleges that good cause exists because the Agency engaged in fraud.

His first theory is that the Agency inappropriately altered his SF-50 after he received a copy at the time of the settlement. There are discrepancies between his copy of the SF-50 and the one contained in his electronic OPF, but the AJ noted these minor typographic differences— slightly larger fonts, the presence or absence of dashes and parentheses, or stray spaces. None of these bears any connection to the authenticity of the "Resignation ILIA" designation on the SF-50.

Gallegos also alleges that even though the Agreement provided for a "voluntary resignation," the Agency included "Resignation ILIA" on his SF-50 instead, and because he was not aware that the ILIA acronym stood for "in lieu of involuntary action," he was fraudulently induced into signing the Agreement. According to Gallegos, the Agency officials had a fiduciary duty to explain this acronym to him at the time of the Agreement. We disagree.

The Agreement explicitly placed the burden on Gallegos to review the SF-50, stating that Gallegos "will be provided with a copy of the revised SF-50 for inspection, and [Gallegos] will notify the Agency of any concerns

within 15-days of receipt of the form." J.A. 120. Furthermore, as the Board noted, Gallegos was represented by counsel when executing this settlement. Thus, Gallegos could have and should have inquired about the acronym at the time of receiving his revised SF-50. We find no error in the Board's conclusion that Gallegos failed to establish good cause for his untimely filing.

## AFFIRMED

### COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**JOSEPH R. GALLEGOS,**
*Petitioner*

v.

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2016-2120

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-01-0157-C-1.

---

NEWMAN, *Circuit Judge,* dissenting.

This case should have been resolved without litigation. The government admits that it violated its Settlement Agreement with Mr. Gallegos, yet refuses to correct its violation, on the theory that since Mr. Gallegos did not recognize the code by which the violation was achieved, the government has no obligation to correct the violation.

Mr. Gallegos requests that his SF-50 form be corrected to comply with the Agreement. The government refuses even now to make this simple correction, to remove this blight on Mr. Gallegos' record. My colleagues on this panel place the fault not on the government for violating the Agreement, but on Mr. Gallegos for not discovering the violation when it occurred. I respectfully dissent.

DISCUSSION

Mr. Gallegos and the government entered into a Settlement Agreement that the "removal action will be substituted with a voluntary resignation," and that a new SF-50 form would be prepared to "effectuate the resignation." Settlement Agreement at 2. A new SF-50 was issued, stating "Resignation ILIA." Mr. Gallegos did not decipher the code word "ILIA." The question before us is not how this non-compliance arose; the question is whether it will be corrected. My colleagues hold that Mr. Gallegos cannot obtain correction because he did not request correction immediately. Thus the government argues, and my colleagues affirm, that the violation of the Agreement will not be remedied.

The initials ILIA are apparently recognized by personnel officials as "in lieu of involuntary action" — the information prohibited by the Settlement Agreement, which states:

> The removal action will be substituted with a voluntary resignation. Appellant's resignation will be effective on September 29, 2000, which is the date on which the reassignment became effective. The Appellant will be provided with a Standard Form-52, Request for Personnel Action. The Appellant must indicate the reasons for his resignation on the SF-52 form. In order to continue receiving severance pay, appellant must also state that "*Due to personal considerations, I am unable to relocate to San Antonio, Texas.*" The SF-52 will be dated September 29, 2000. The information in the SF-52 form will be used to prepare the Notification of Personnel Action or SF-50 to effectuate the resignation. Appellant will be provided with a copy of the revised SF-50 for inspection, and will notify the Agency of any concerns within 15 days of receipt of the form.

Settlement Agreement at 2. The Board holds that since Mr. Gallegos was given a copy of the improperly coded SF-50 at the time of his separation, he was required to object within 15 days or forever remain silent. However, such an obligation does not arise when the error is not readily recognizable. Technical knowledge of the ILIA acronym cannot be imputed, at least in the absence of any reason to be suspicious that the government would undermine its Agreement, even by clerical error.

Mr. Gallegos filed this petition about two months after he confirmed the violation. A petition for enforcement should be filed within a "reasonable time" following actual knowledge of breach of the Agreement. *Kasarsky v. MSPB*, 296 F.3d 1331, 1335 (Fed. Cir. 2002). Mr. Gallegos did so. Yet the government refuses to correct the SF-50, although the breach is not denied.

In justice, correction is required, and could easily have been implemented without this extended litigation. It is unconscionable to refuse to correct the form. I respectfully dissent.