BANNUM, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Dismas Charities, Inc., Defendant–
Intervenor.

No. 03–1751C.

United States Court of Federal Claims.

June 8, 2004.[1]

---

1. This opinion was issued under seal on May 24, 2004. Pursuant to ¶ 6 of the ordering language, defendant identified protected/privileged materi-al subject to deletion. Brackets note the deleted material on pages —— and ——.

Kevin M. Cox, Auburn, NY, for plaintiff.

Ada E. Bosque, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant.

Alex D. Tomaszczuk, McLean, VA, for intervenor. Daniel S. Herzfeld, Shaw Pittman LLP, of counsel.

### *OPINION*

CHRISTINE O.C. MILLER, Judge.

This post-award bid protest action is before the court on the parties' cross-motions

for judgment on the administrative record.[2] Plaintiff protests the Bureau of Prisons' award of three Community Corrections Center contracts to intervenor and seeks a permanent injunction, as well as monetary and other relief. Plaintiff alleges that the Government's evaluation process violated applicable procurement regulations by failing to consider rebuttal comments to its contractor evaluation forms. Defendant and intervenor counter that any objections to the solicitation process are untimely; in any event, the award decisions complied with procedures set forth in the solicitations and conformed to all applicable regulations. Argument is deemed unnecessary.

## FACTS

The relevant facts derive from the administrative record. On August 6, 2001, January 11, 2002, and April 29, 2002, the United States Department of Justice, Federal Bureau of Prisons (the "BOP"), issued solicitations, respectively, for Community Corrections Center ("CCC") services in Hattiesburg, Mississippi; Laredo, Texas; and Greensboro, North Carolina. CCC services assist federal offenders with transitioning back into society after serving prison sentences. The contractors furnish the personnel, management, equipment, supplies, and services essential for running a CCC.

These solicitations provided for best-value procurements, thereby enabling the BOP to select the offer that best suited its particular needs and rendered the most value for the price. In each instance the BOP issued a negotiated request for proposals ("RFP").

Each solicitation requested information concerning the offeror's past performance. Identical on point, the solicitations called for the following information:

(1) A list of all contracts and subcontracts completed during the past three years and all contracts and subcontracts currently in process. . . .

(2) The offeror is required to submit information on problems encountered on the contracts and subcontracts (identified in (1) above) and the corrective action(s) taken to resolve the issue(s). . . .

(3) Describe any Quality awards or certifications that indicate the offeror's organization is capable of providing High–Quality services as required by the Statement of Work. . . .

(4) Each offeror will be evaluated on performance under existing and prior contracts for similar services. Performance information will be used as an evaluation factor against which offerors' relative rankings will be compared and in a responsibility determination to assure best value to the Government. Evaluation will focus on information which demonstrates Quality of performance. The *Contractor Evaluation Form,* located in Section J, will be used to collect this information. References other than those identified by the offeror may be contacted by the Government with the information received used in the evaluation of past performance.

A sample Client Authorization Letter is contained in Section J of this solicitation. It is the offeror's responsibility to issue Client Authorization letters to prospective references from whom past performance information will be sought.

Laredo Solicitation, RFP 200–0721–SC, issued Jan. 11, 2002 at § L.12 "Content of Past Performance Proposals," pp. 62–63; Hattiesburg Solicitation, RFP 200–0697–SE, issued Aug. 6, 2001, at § L.11 "Content of Past Performance Proposals," pp. 70–71; Greensboro Solicitation, RFP 200–0743–MA, issued Apr. 29, 2002, at § L.12 "Content of Past Performance Proposals," pp. 60–61.

Both the Laredo and Greensboro solicitations stated that "[a]ll evaluation factors other than cost, when combined, are significantly more important than cost." Laredo Solicitation, § M.5 "Evaluation Criteria and their Relative Importance," at p. 66; Greensboro Solicitation, § M.5 "Evaluation Criteria and their Relative Importance," at p. 65. In addition to past performance, the other factors were community relations, technical, management, and cost. The crite-

---

**2.** The administrative record is abbreviated "AR." This opinion cites to the AR only when a docu-

ment is not self-identified in the record by its date.

ria were the same for Hattiesburg, except that community relations was not a factor. All three solicitations designated past performance as the most significant evaluation criterion. Accordingly, each solicitation detailed a five-step procedure by which the BOP would review the past performance of each bidder. The procedure indicated that the past performance would be a "subjective assessment based on consideration of all relevant facts and circumstances," such that "offerors would be well served to be aware of possible dissatisfied customers and address the issues in initial proposal submissions." Laredo Solicitation, at § M.5 Factor I(b) "Past Performance," p. 67; Hattiesburg Solicitation, at § M.5 Factor I(b) "Past Performance," p. 75; Greensboro Solicitation, at § M.5 Factor I(b) "Past Performance," pp. 65–66.

In response to the Laredo RFP, plaintiff, as the incumbent contractor, submitted copies of certain Contractor Evaluation Forms ("CEFs") for the BOP contracts that it had performed or was performing at that time. Plaintiff disputes defendant's assertion that plaintiff failed to include copies of the rebuttal comments referenced in certain of those CEFs. Plaintiff maintains that it addressed "all unfavorable reports by submitting detailed rebuttals during performance of the contract and with its proposal," Pl.'s Resp. to Def.'s Proposed Findings of Fact ¶ 13, filed Jan. 29, 2004, and faults the BOP for failing to retain the rebuttals as Source Selection Information in its past performance file. However, plaintiff does not cite to any page in the administrative record pertaining to the Laredo solicitation to substantiate its submission of rebuttal comments with its proposal.[3] In conducting the past performance evaluation, the contracting officer considered adjusted CEFs where available for three out of plaintiff's four lowest ratings.

Upon completion of the evaluation for each factor the BOP awarded the contract to Dismas Charities, Inc. ("intervenor").[4] Intervenor's [   ]-point total not only exceeded plaintiff's [   ]-point total, but intervenor also outscored plaintiff in every category other than cost. Because intervenor did not tender the offer with the lowest price, a tradeoff was conducted pursuant to 48 C.F.R. (FAR) § 15.101–1 (2003), ensuring that the higher priced offer still provided the best value to the Government. The BOP awarded the Laredo contract to intervenor on March 31, 2003, with an effective date of August 1, 2003.

The events surrounding the Greensboro, North Carolina solicitation parallel those concerning the Laredo solicitation. Plaintiff had been the incumbent contract in Greensboro since 1998. Again, plaintiff submitted select copies of CEFs, but did not include any of the referenced rebuttal comments.[5] The portion of the administrative record reflecting the agency's past performance evaluation of plaintiff for the Greensboro contract includes several CEFs with plaintiff's rebuttal comments attached. Plaintiff does not confront these documents in the administrative record, but makes unsupported claims that the contracting officer did not permit plaintiff to address the unfavorable past performance information in its file, contrary to regulation. Pursuant to FAR § 15.101–1, tradeoff considerations were analyzed to make certain that awarding to a higher priced bidder served the best interest of the Government. Ultimately, the BOP awarded plaintiff a total of [   ] points and intervenor [   ] points. Because the selection authority determined that intervenor's higher quality services were worth the additional cost, the Greensboro contract was awarded to intervenor on July 2, 2003, with an effective date of November 1, 2003.

---

3. David A. Lowry, plaintiff's executive director, signed most of these CEFs, and on several the notation "see attached comments" appears near his signature, although no comments are reflected in the record. *See* AR 4922, 4924, 4926–27. Several CEFs are missing signatures at the bottom of the form. One is not signed at all.

4. Each factor was assigned a certain number of points. Past performance had a value of 400

maximum points; community relations, 350; technical, management, and cost were all assigned 250 maximum points.

5. Plaintiff issues another denial, but again, cites nothing in the administrative record reflecting that it addressed all unfavorable reports by submitting detailed rebuttals with its proposal.

Much the same scenario occurred during the Hattiesburg procurement. Plaintiff listed its active and completed contracts with other BOP CCCs as part of its business proposal. The contracting officer considered the corresponding CEFs in evaluating plaintiff's past performance. Again, these included adjustments accounting for rebuttal comments where appropriate. The selection authority also conducted a tradeoff as plaintiff, and not intervenor, submitted the proposal with the lowest price. On June 3, 2003, the BOP awarded the contract to intervenor with an effective date of October 1, 2003; intervenor's score of [ ] exceeded plaintiff's score of [ ].

Plaintiff filed its complaint on July 22, 2003, alleging that the BOP violated regulations related to past performance evaluations when awarding contracts for CCCs in Laredo, Greensboro, and Hattiesburg.[6] Plaintiff originally requested a judgment declaring that the BOP "has acted arbitrarily, capriciously, and in violation of the law and terms of the subject RFPs in award[ing] the contracts protested herein," a temporary restraining order, a preliminary and permanent injunction, bid preparation costs, costs and attorneys' fees, and any other relief deemed proper. Compl. at 11–12. After plaintiff declined to pursue its request for injunctive relief, defendant moved on September 22, 2003, for judgment on the administrative record. Based, *inter alia*, on the parties' reported discussions relating to settlement, plaintiff requested three successive enlarge-

ments of time, ultimately filing its cross-motion for judgment on the administrative record on January 29, 2004. The parties' leisurely briefing of the cross-motions indicates their lack of urgency in addressing plaintiff's claims for injunctive relief. Indeed, the passage of time has mooted any claim for preliminary injunctive relief. *See* RCFC 65(b).

As framed in its cross-motion, plaintiff requests that the court award contracts to plaintiff for CCC services in Laredo, Greensboro, and Hattiesburg, Mississippi, or, alternatively, to re-evaluate the proposals in accordance with the law, on the ground that the awards were arbitrary, capricious, and in violation of the law.[7] Plaintiff also requests its bid or proposal preparation costs for those three RFPs.

## DISCUSSION

### 1. *Standard of review*

Jurisdiction in the Court of Federal Claims is prescribed by the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000), which allows a protestor to challenge "the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Two types of challenges may be brought: one testing the substance of the agency's decision and the other testing the procedures mandated by regulations for conduct of the procurement. *See generally Banknote Corp. of America, Inc. v. United*

---

**6.** Plaintiff's complaint also protested contract awards for CCCs in Charleston, South Carolina, and Lexington, Kentucky, in addition to the others discussed above. The BOP is re-evaluating the awards in both the Charleston, South Carolina procurement, based on a protest that plaintiff filed with the General Accounting Office, and also the Lexington, Kentucky procurement because of similar deficiencies. Because the BOP has not made a final determination as to the contract awards for the Charleston and Lexington CCCs, plaintiff's challenges are premature. Although it agrees to dismissal with prejudice of the claim regarding the Charleston award, defendant requests a voluntary remand of the Lexington procurement. Plaintiff has agreed to "dismiss the instant protest without prejudice as it relates to those two procurements." Pl.'s Br. filed Jan. 29, 2004, at 2 n. 1. Intervenor does not object to dismissing the count concerning the Charleston solicitation, but opposes the agency's

"request to remand the Lexington Solicitation to the agency as unnecessary and untimely." Intv.'s Br. filed Mar. 12, 2004, at 2.

The court thus orders plaintiff's protest of the Charleston award dismissed voluntarily without prejudice. *See* RCFC 41(b)(2). Plaintiff will be instructed to file a stipulation of voluntary dismissal without prejudice of its protest regarding the Lexington award. Accordingly, the challenges to the Charleston and Lexington procurements are not considered further.

**7.** Plaintiff's complaint lists specifically only FAR § 42.1503(b) (2003), as a procurement regulation that has been offended. The complaint also alleges that the BOP failed to provide plaintiff with the due process required for the CEF evaluation procedure, but this allegation was not pursued in any subsequent briefing.

*States,* 365 F.3d 1345, 1350–51 (Fed.Cir. 2004).

The court evaluates the procuring agency's conduct to determine whether the Government's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1319 (Fed.Cir.2003). The test is " 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a 'heavy burden' of showing that the award decision had no rational basis.' " *Banknote,* 365 F.3d at 1351 (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332–33 (Fed.Cir.2001)).

■ When asserting a violation of regulation or procedure, the disappointed bidder must demonstrate a "clear and prejudicial violation of applicable statutes or regulations." *Kentron Haw., Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973); *see also Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996). "To establish prejudice under this second ground, a protester must show that there was a 'substantial chance' it would have received the contract award absent the alleged error." *Banknote,* 365 F.3d at 1351; *see also JWK Int'l Corp. v. United States,* 279 F.3d 985, 988 (Fed.Cir.2002). Where the record establishes no reasonable possibility of competitive prejudice to the protestor, a protest should not be sustained, even if a defect in the procurement is found. *Statistica,* 102 F.3d at 1581. The Federal Circuit has recognized that "in a negotiated procurement . . . the regulations entrust the contracting officer with especially great discretion, extending even to his application of procurement regulations." *American Tel. & Tel. Co. v. United States,* 307 F.3d 1374, 1379 (Fed.Cir.2002).

The award of injunctive relief is extraordinary and only merited in " 'extremely limited circumstances.' " *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1372 (Fed.Cir. 1983). The Federal Circuit has applied the standards for injunctive relief as developed by the District of Columbia Circuit. *See Banknote,* 365 F.3d at 1351 (applying precedent of the United States Court of Appeals for the District of Columbia Circuit); *CACI Field Servs., Inc. v. United States,* 854 F.2d 464, 466 (Fed.Cir.1988) (same). Injunctive relief will issue upon a showing by a preponderance of the evidence.

■ However, one observes with respectful concern a line of decisions emanating from the judges of this court has required that the protestor prove its entitlement to injunctive relief by "clear and convincing evidence."[8] *See, e.g., Filtration Dev. Co. v. United States,* 60 Fed.Cl. 371, 373, 384, 386, 388 (2004); *Overstreet Elec. Co. v. United States,* 59 Fed.Cl. 99, 109–10 (2003); *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983). *Baird* is the cited authority for all subsequent cases applying this standard of proof. *Baird* relied on *Goldammer v. Fay,* 326 F.2d 268, 270 (10th Cir.1964), which states, as follows: "Injunction is a drastic remedy to be exercised with caution, and should be granted only in cases where the necessity therefor is clearly established." Neither on the cited page nor elsewhere in the opinion does *Goldammer* discuss or apply the standard of clear and convincing evidence. In fact, the Tenth Circuit affirmed the trial court's finding that no credible evidence supported plaintiff's entitlement to injunctive relief. *Goldammer,* 326 F.2d at 270. In addition to resting on flawed authority, other pertinent considerations caution against the application of the clear and convincing standard.

First, binding precedent has not adopted this heightened burden of proof in bid protest actions. The Federal Circuit recognizes clear and convincing evidence as one of three standards of proof: "preponderance of the evidence," "clear and convincing," and "be-

---

8. A recent note in *The Federal Circuit Bar Journal* discusses the varied jurisprudence regarding the burden of proof in bid protest cases and finds no support for applying the "clear and convincing standard." Jennifer Wittmeyer, *Conflicts in the Court of Federal Claims: The Federal Circuit's Key Decisions and Resolutions Over Bid Protest Practice,* 13 *Fed. Cir. Bar J.* 507, 516–20 (2004) (recognizing that compounding clear and convincing standard with clear violation standard is improper, confusing an evidentiary standard with a judicial review standard).

yond a reasonable doubt." *Price v. Symsek,* 988 F.2d 1187, 1191 (Fed.Cir.1993). *Price* explains:

A requirement of proof by clear and convincing evidence imposes a heavier burden upon a litigant than that imposed by requiring proof by preponderant evidence but a somewhat lighter burden than that imposed by requiring proof beyond a reasonable doubt. "Clear and convincing" evidence has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is "highly probable."

*Id.* (citations omitted) (determining quantum of proof required to establish priority in patent interference proceeding).

Because clear and convincing is a heightened standard, its application is restricted. The Federal Circuit traces the requirement of proof by clear and convincing evidence to rebutting the presumption of good faith, which applies "only in the situation where a government official allegedly engaged in 'fraud or in some other quasi-criminal wrongdoing.'" *See Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239 (Fed.Cir.2002). The requirement of clear and convincing evidence has been applied to fraud, *see, e.g., UMC Elecs. Co. v. United States,* 249 F.3d 1337, 1339 (Fed.Cir.2001); a challenge to a patent's validity, given the presumption of validity, *see, e.g., Mentor H/S, Inc. v. Medical Device Alliance, Inc.,* 244 F.3d 1365, 1375 (2001); and inequitable conduct, which is the predicate for a finding that a patent case is exceptional and thereby warrants an award of attorneys' fees, *see, e.g., Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.,* 351 F.3d 1139, 1146 (Fed.Cir. 2003).

Second, *Goldammer,* which was decided in 1964 and applied Colorado state law to a Dairy Queen franchise dispute, is not relevant to the court's bid protest jurisdiction. Congress conferred the court's bid protest jurisdiction in 1982 with the specific instruction to apply the law developed by the District of Columbia Circuit, the so-called *Scanwell* doctrine, *see Scanwell Labs. Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970). *See CACI, Inc.-Federal v. United States,* 719 F.2d 1567, 1573 (Fed.Cir.1983) (citing S.Rep. No. 275, 97th Cong., 2d Sess. 23 (1981), reprinted in 1982 U.S.C.C.A.N. 11, 33; H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981)); *see also Banknote,* 365 F.3d at 1350; *Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1079 (Fed.Cir.2001). The *Scanwell* line of cases did not require proof by clear and convincing evidence.

Third, application of the heightened standard to bid protests would be illogical because a protestor need demonstrate only a probability of success on the merits to obtain temporary and preliminary injunctive relief.

### 2. The role of the administrative record

■ Under RCFC 56.1, motions for judgment on the administrative record are reviewed under the same standards as motions for summary judgment. *See Banknote,* 365 F.3d at 1352–53. Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A motion for summary judgment on the administrative record nonetheless differs from a motion for summary judgment. Although the administrative record contains facts that the parties deem both disputed and material, the court can resolve the case on the administrative record if, given the deferential standard of review, the protester fails to prove either (or both) that a decision is not rational or that a violation of a regulation occurred. In the rare case where the court cannot make the determination on the record, an evidentiary hearing is required. The question of the scope of review has practical consequences. The court must cosset those factual issues appropriate for resolution through an evidentiary hearing or by trial.

■ RCFC 56.1 was adopted to address the morass that review of the records presented by military back pay cases. While the prospect of a trial was not contemplated, the tools of statement and counterstatement of facts served to identify exactly what record facts the parties deemed pivotal to their

arguments. The existence of disputed facts was irrelevant to the method of disposition: It was a record review. *See Long v. United States,* 12 Cl.Ct. 174, 176, *aff'd,* 824 F.2d 976 (Fed.Cir.1987) (unpubl). Although RCFC 56.1 also serves as a tool for setting forth the facts that give rise to bid protest cases, the standards for disposition pursuant to the Rule 56 standards for summary judgment are neither displaced nor modified. Indeed, the court's bid protest jurisdiction is not limited to review of the so-called administrative record, as its background and statutory mandate demonstrate. *See Banknote,* 365 F.3d at 1350 (citing *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.2000) for the proposition that bid protests do not present an agency record derived from a hearing).

In directing the Court of Federal Claims to apply District of Columbia precedent, "Congress intended the Claims Court [now the Court of Federal Claims] to have the same authority over suits by unsuccessful bidders ... that the district courts had under *Scanwell.*" *CACI, Inc.-Fed.,* 719 F.2d at 1573. The legislative history of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, clearly expressed that intent:

> By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not intend to alter the current state of the substantive law in this area .... The Committee intends the court to take great care not [to] delay or prevent the award of contracts for goods or services which relate to the national defense or security.

H.R.Rep. No. 97–312 at 44 (1981).

The Administrative Dispute Resolution Act of 1996, ("ADRA"), Pub.L. No. 104–320, 110 Stat. 3870, expanded the jurisdiction of the Court of Federal Claims relative to bid protests. Also, for the first time, the ADRA specified the standard of review to be applied: "In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4).

In granting expanded protest jurisdiction and setting forth the standard for review, Congress codified the review standards developed by *Scanwell* and its progeny. However, in exercising its bid protest jurisdiction, the Court of Federal Claims is not reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706 (2003) (the "APA"); it is exercising jurisdiction over bid protests using the APA standard of review. *See Banknote,* 365 F.3d at 1350–51.

The Department of Justice's avowed mission in defending procurement decisions in court has been to confine bid protests to the administrative record and to seek remands to the agency to resolve any factual issues. If this view were adopted, however, the ADRA's grant of bid protest jurisdiction would be denatured. RCFC 65 (which is *in pari materia* with the Federal Rules of Civil Procedure's counterpart that Congress has adopted to govern the grant of injunctive relief in federal district courts) governs bid protests. The first step is the filing of an application for a temporary restraining order. This procedure cannot, by definition, be conducted based on an administrative record, which is yet to be assembled and filed in court. Moreover, a hearing on an application for a temporary restraining order frequently includes affidavits and/or witness testimony to support the requested relief. *See Atari Games Corp. v. Nintendo of America, Inc.,* 897 F.2d 1572, 1575 (Fed.Cir.1990) (stating the "general rule" that a preliminary injunction should not issue on affidavits alone). The setting of bond pursuant to RCFC 65(c) also can require the taking of testimony.

Some issues are not amenable to record review. Reserving cases that present genuine issues of material fact for trial need not delay a procurement beyond the time contemplated for record review. Discovery is trimmed to essentials, *see Impresa Construzioni Geom. Domenico Garufi,* 238 F.3d at 1327, 1338–39 (ordering deposition of contracting officer to place on record basis of responsibility determination), and a trial or an evidentiary hearing is scheduled immediately after limited discovery, with the decision rendered forthwith.

The Court of Federal Claims should be an efficient forum for resolving bid protests. *See CACI–Fed.,* 719 F.2d at 1581. If bid protests were to become administrative proceedings, such an unintended consequence would not only increase the time involved in judicial review of bid protests, but could deprive a protestor of the injunctive relief to which it is entitled if the agency decision is found to be defective.[9]

The parties agree that this case can be resolved on the administrative record.

### 3. *Whether jurisdictional hurdles or laches bar plaintiff's claims*

■ According to defendant, this court "does not possess jurisdiction to consider [plaintiff's] challenge to the CEFs" because they were not the subject of a contracting officer's final decision. Def.'s Br. filed Sept. 22, 2003, at 4. By initiating its challenge in the Court of Federal Claims and not first submitting a claim to the contracting officer, defendant argues that plaintiff has circumvented the contract disputes process dictated in its various contracts. In defendant's view, jurisdiction of the Court of Federal Claims does not extend to evaluation of allegations concerning contract administration.

Plaintiff's contracts with the BOP incorporate the FAR's Disputes clause, 48 C.F.R. § 52.233–1. The pertinent provision stipulates:

A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

FAR § 52.233–1(d)(1). Plaintiff did not submit any claims to the contracting officer;

instead, it initiated litigation by filing the instant case in the Court of Federal Claims.

Defendant takes the position that FAR § 52.233–1(d)(1) remits plaintiff to the appropriate contracting officers in order to challenge the process for evaluating CEFs, citing *Valley View Enters., Inc. v. United States,* 35 Fed.Cl. 378, 386 (1996), as analogous support. The *Valley View* plaintiff sought, during contract performance, to avoid completion of its contractual duties via a ruling in the Court of Federal Claims. True, the court highlighted the "dangers of judicial involvement in contract administration," but the danger was heightened in *Valley View* because the contractor had not completed performance before bringing suit. *Id.* at 384.

Although plaintiff did not respond to defendant's argument in its subsequent cross-motion, *see* Pl.'s Br. filed Jan. 29, 2004, the court rules that plaintiff's protest is not a claim redressable under a Disputes clause to the contracting officer, but a claim squarely within the court's bid protest jurisdiction. *See* 28 U.S.C. § 1491(b)(1) ("Court of Federal Claims ... shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract of any alleged violation of statute or regulation in connection with a procurement or a proposed procurement").

Defendant's real contention, seconded by intervenor, is that plaintiff failed to challenge the terms of the solicitation before submitting its proposal, thereby waiving its right to contest the evaluation process. In *Aerolease Long Beach v. United States,* 31 Fed.Cl. 342, 358 (1994), *aff'd,* 39 F.3d 1198 (Fed.Cir.1994) (unpubl.), the court declined to adopt for all cases General Accounting Office procedures, which require that protests concerning improprieties with solicitations be filed prior to bid openings, but embraced the utility of such procedures in the bid protest realm.[10]

---

9. The interference with the court's expeditious resolution of bid protests is not hypothetical. For example, one recent decision attempts to reconcile the Department of Justice's position by confining judicial review of the merits of the contracting officer's award decision to the administrative record and remitting additional fact-finding on the merits to the agency, thereby

restricting judicial fact-finding to the other three requirements for injunctive relief, as to which the administrative record provides no enlightenment (irreparable injury, balancing of harm, and public interest). *See PGBA, LLC v. United States,* 60 Fed.Cl. 196, 204 n. 11 (2004).

10. Other administrative tribunals adhere to even stricter guidelines. The General Services Admin-

The court stated that those procedures mandate that the bidder raise any problem within the solicitation before submission of the offer, or risk that the reviewing tribunal will regard the right to contest as waived. *Id.*[11]

■ While challenges to the terms of the solicitation are appropriate only prior to submission of final proposals, challenges to the evaluation may be raised after final proposal submission. Plaintiff characterizes its bid protest as a challenge implicating the evaluation process, but, upon closer examination, plaintiff is contesting the BOP's formation and maintenance of plaintiff's files containing CEFs upon completion of plaintiff's prior contracts. Plaintiff's complaint more resembles the challenge of a solicitation term than the challenge of the evaluation process.

The prudent course in contesting the legality of solicitation procedures is to raise the issue at a time prior to the submission of the proposal. Failure to do so leaves the agency little option other than to follow the procedure mandated for competitive negotiated acquisitions by FAR § 15.305(a), which provides that an "agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation." The law tracks this rationale. *See Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States,* 56 Fed.Cl. 502, 519 (2003) (citing FAR § 15.305 and stating that plaintiff cannot undermine proposal evaluation where it conformed to solicitation criteria). Indeed, plaintiff would have a claim had the BOP failed to apply properly the solicitation's criteria. *See Southfork Sys., Inc. v. United States,* 141 F.3d 1124, 1137 (Fed.Cir. 1998) (holding solicitation criteria were applied properly). Plaintiff missed the proper time frame for protest. In order to provide a comprehensive analysis, however, the court will address fully plaintiff's specific contentions.

Defendant argues that the doctrine of laches bars all of plaintiff's challenges to the use of the CEFs. Intervenor presses the same argument to bar the Laredo protest.

■ Although laches is an equitable defense, one may interpose this defense in a civil action. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1031 (Fed.Cir.1992) (en banc) (holding laches applicable to legal claim for damages in patent litigation). The defense of laches requires that "1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time he knew or reasonably should have known of his claim against the defendant; and 2) the delay operated to the prejudice or injury of the defendant." *Poett v. Merit Sys. Protection Bd.,* 360 F.3d 1377, 1384 (Fed.Cir.2004) (citing *Aukerman,* 960 F.2d at 1032); *see also JANA, Inc. v. United States,* 936 F.2d 1265, 1269 (Fed.Cir.1991). Economic prejudice exists "where a defendant and possibly others ... suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Wanlass v. Gen'l Elec. Co.,* 148 F.3d 1334, 1337 (Fed.Cir.1998) (quoting *A.C. Aukerman,* 960 F.2d at 1033). A federal court may dismiss a case where the plaintiff's lack of diligence is wholly unexcused, and the case required such diligence. *A.C. Aukerman,* 960 F.2d at 1032.

■ Defendant faults plaintiff for being aware of its CEFs long before submitting its proposals and then failing to raise its concerns prior to submitting its proposals. Intervenor's focus is that the BOP issued the written post-award debriefing informing plaintiff of the rationale behind the award of the Laredo contract to intervenor on April 30, 2003. Plaintiff delayed three months in challenging the award before filing the complaint in this case on July 22, 2003. Intervenor objects that it incurred costs renovating a building for use as a CCC facility, hired

---

istration Board of Contract Appeals rules dictate: " 'A ground of protest ... shall be filed no later than 10 working days after the basis for the ground of protest is known or should have been known, whichever is earlier.' " *Widnall v. B3H Corp.,* 75 F.3d 1577, 1585 (Fed.Cir.1996) (quoting 48 C.F.R. § 6101.5(b)(3)(ii) (1994)). Those

rules also place upon the disappointed bidder the burden of pleading the timeliness of the protest.

11. Plaintiff offers no case law in support of its ability to challenge the solicitation process after the contract has been awarded. *See generally* Pl.'s Br. filed Jan. 23, 2004.

employees, and expended management resources for training new employees to assure that the new site would be ready within the required 120 days of contract award.

The record supports a finding that plaintiff could have pursued its claim more diligently, but the bar of laches cannot be invoked by the mere passage of time. *See Poett,* 360 F.3d at 1384. Defendant does not identify the prejudice resulting from plaintiff's failure to raise earlier its concerns with the CEFs. Intervenor has failed to demonstrate that this delay was unreasonable and that any loss suffered could have been prevented by earlier suit. Intervenor may well have incurred the same costs even had plaintiff filed earlier. Although the proponents of summary judgment have not made the requisite showing of prejudice, *see* RCFC 56(c), the court suggests that plaintiff has borne the ultimate penalty for its failure to challenge the solicitation in a timely manner, so the bar of laches would be cumulative.

### 4. *Whether the award decisions violated the FAR*

Plaintiff argues that the BOP violated certain applicable procurement regulations by utilizing CEFs that did not retain rebuttal comments and that were not reviewed at a level above the contracting officer. The broad-brush allegations are refined into the specific charges that the BOP's system using CEFs to evaluate past performance violates FAR §§ 15.306(d)(3), 15.308, 42.1503, and 2842.1503.

The first charge is that the evaluation system violates FAR § 42.1503, which establishes requirements for past performance evaluations by the Government. Plaintiff emphasizes that the regulation provides:

Agencies shall provide for review at a level above the contracting officer to consider disagreements between the parties regard-

ing the evaluation. . . . Copies of the evaluation, contractor response, and review comments, if any, shall be retained as part of the evaluation. These evaluations may be used to support future award decisions, and should therefore be marked "Source Selection Information".

FAR § 42.1503(b).

Plaintiff finds the CEF system defective in its failure to provide for a review of the CEFs "at a level above the contracting officer." Pl.'s Br. filed Jan. 29, 2004, at 12. According to plaintiff, only "low end regional field employees" drafted and scored the CEFs, and they were not made subject to review by any higher ranking official in conjunction with plaintiff's rebuttal comments. *Id.* Plaintiff discounts the review conducted by "other BOP field employees (i.e.—MCA [12])" because those employees "had absolutely no authority whatsoever with respect to contractual matters." *Id.*

Plaintiff also asserts that the BOP should have maintained CEFs, along with the rebuttal comments, in plaintiff's past performance file, as required by FAR § 42.1503. Because, plaintiff argues, the BOP makes all contract award decisions from its Washington, D.C. office and the FAR requires that all Source Selection Information be retained, plaintiff "had absolutely no reason to believe that if it did not submit all of its CEFs and rebuttals as part of its proposal, then its rebuttals would not be considered by the BOP when reviewing its proposal." Pl.'s Br. filed Jan. 29, 2004, at 13.

Defendant responds that plaintiff confuses the role of past performance evaluations in awarding contracts, which would provide a proper basis for a protest, with past performance evaluations used in evaluating contractor ability during the course of performance, which would not.[13] Moreover, even were

---

**12.** "MCA" refers to Management Center Administrators.

**13.** Defendant cites two Court of Federal Claims cases for this proposition, *Advanced Data Concepts, Inc. v. United States,* 43 Fed.Cl. 410 (1999), and *Computer Sciences Corp. v. United States,* 51 Fed.Cl. 297 (2002). Both of these cases discuss the evaluation of past performance records. In *Computer Sciences* plaintiff argued that "defen-

dant's actions were arbitrary, capricious and contrary to law because [the agency] did not conduct a comparative assessment of the offerors' past performance." 51 Fed.Cl. at 319. The court rejected this argument, concluding that the past performance analysis was sufficiently comparative to satisfy the FAR. Interpreting FAR §§ 15.305 and 15.303 in conjunction with solicitation requirements, the court found that the

plaintiff's contentions regarding the evaluation process appropriate subject matter for a bid protest, the process at issue conforms to the FAR.

Defendant is correct on both counts. FAR § 42.15–Contractor Performance Information outlines the relevance of past performance information for future source selection and describes the procedures that agencies must follow in preparing such evaluations. This evaluation process, however, occurs "at the time the work under the contract is completed." FAR § 42.1502(a). Consequently, any issue with the evaluation process itself is not appropriate for a bid protest, which examines whether the agency examined properly all documentation before it in making the contract award determination. *See Ocean Technical Servs., Inc.*, 2001 WL 1505946, at *3, 2001 U.S. Comp. Gen. LEXIS 172, at *9 (Nov. 27, 2001) ("Our bid protest forum is not the place for a firm to first complain of not having received an assessment, nor do we serve as a forum for a firm to dispute the substance of an agency's assessment of the firm's work."); *Oregon Iron Works, Inc.*, 2000 WL 1048048, at *6, 2000 U.S. Comp. Gen. LEXIS 108, at *16–17 (June 15, 2000) (stating that FAR Part 15 establishes source selection policies and procedures for negotiated procurements and declining to impute to Part 15 any requirements from FAR Part 42).

The evaluation process substantially complied with the FAR.[14] Evaluations were prepared and provided to the contractor as FAR §§ 42.1502(a) and 42.1503(b) prescribe. *See, e.g.*, AR 9741 (Contractor Interim/Final Performance Report signed by David A. Lowry, Executive Director of Plaintiff). As

defendant points out, MCAs are supervisory employees who are responsible for two to three community corrections field offices. Review by MCAs satisfies the requirement that "[a]gencies shall provide for review at a level above the contracting officer to consider disagreements between the parties regarding the evaluation," because it provides for third party review. *See* FAR § 42.1503(b). The provision does not require that a supervisory contract officer perform the review. *See id.*

Plaintiff also contends that the BOP did not provide for discussion regarding plaintiff's "deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond." FAR § 15.306(d)(3). "Defendants completely failed to allow [plaintiff] to address the negative CEFs the BOP used to lower its past performance, and ultimately deny it contracts in Laredo, Greensboro, and Hattiesburg," plaintiff asserts. Pl.'s Br. filed Jan. 29, 2004, at 13. The controlling FAR provision, § 15.306(d)(3), requires discussion for

> deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond.... However, the contracting officer is not required to discuss every area where the proposal could be improved. The scope and extent of discussions are a matter of contracting officer judgment.

FAR § 15.306(d). Plaintiff cites no CEFs that were deemed "poor" or otherwise deficient. Moreover, plaintiff had the opportunity to respond to any CEFs that it considered adverse by submitting rebuttal comments with its proposals, but failed to do so. Sub-

---

Source Selection Authority's review of the past performance evaluations was limited to ensuring their accuracy, comparing the results, and forming independent conclusions based on this information.

*Advanced Data*, like the instant case, involved a negotiated procurement. The court explained that agencies are required to rate offerors' past performance pursuant to statute and FAR § 42.1502(a). These evaluations allow agencies to verify a contractor's past performance on prior contracts per FAR § 15. In response to plaintiff's claim that the agency disregarded certain interim evaluations, the court found that the

agency was not required to address those evaluations. Plaintiff had not submitted the evaluations and failed to demonstrate any prejudice.

14. Plaintiff's list of alleged FAR violations includes FAR § 2842.1503, which indicates that past performance evaluation procedures should include, "to the greatest practicable extent," the factors and procedures outlined in the Office of Federal Procurement Policy handbook. Plaintiff provides no concrete examples of the BOP's failure to implement these procedures "to the greatest practicable extent," other than its recitation of alleged FAR violations discussed above.

mitting rebuttal comments during contract performance is not a substitute for complying with the terms of the solicitation.

■ FAR § 15.308 "Source selection decision" does not escape the wide net that plaintiff cast encompassing regulations that the BOP allegedly violated. "The source selection authority's (SSA) decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation. While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment." FAR § 15.308. According to plaintiff, the BOP violated this provision by employing a "purely mathematical methodology" for calculating point totals and awarding contracts in Laredo and Greensboro, Pl.'s Br. filed Jan. 29, 2004, at 16, because those RFPs did not specifically provide for an award based on highest point total.

Plaintiff's argument ignores that each solicitation outlined a procedure for evaluating the offers. Laredo Solicitation, at § M.5 Factor I(b) "Past Performance," p. 67; Hattiesburg Solicitation, at § M.5 Factor I(b) "Past Performance," p. 75; Greensboro Solicitation, at § M.5 Factor I(b) "Past Performance," pp. 65–66. The SSA utilized points as a tool for weighing the strengths and weaknesses of each contractor in each different category, not as an impermissible purely mathematical calculation. Indeed, by not giving special consideration to plaintiff's status as the incumbent contractor in Laredo and Greensboro, the BOP followed the protocol outlined in the solicitations. The categories for evaluation consisted exclusively of past performance, community relations, technical, management, and cost. The BOP acted well within its "especially great discretion," see American Tel. & Tel., 307 F.3d at 1379, when it awarded fewer points to plaintiff in the community relations category, because the letters testifying to community support for plaintiff were drafted on plaintiff's own letterhead and not on the letterhead of individual community members.[15]

Plaintiff has not established a violation of any procurement regulation. And, despite plaintiff's contentions that, but for the "BOP's use of the illegal CEFs," plaintiff would have had, at a minimum, a "substantial chance" of receiving the contract award, Pl.'s Br. filed Jan. 24, 2004, at 13–14, plaintiff also did not establish the existence of any prejudice, even assuming arguendo that a violation occurred. As discussed above, the solicitations outlined the evaluation procedures, including that for using CEFs to judge a contractor's past performance. The BOP followed those procedures in awarding its contracts. Any inadequacies in the CEF preparation process cannot prejudice a protestor that failed to address its past performance difficulties in its own proposals, as required per the solicitations.

### 5. Injunctive relief

In addition to prevailing on its merits claim, in order to obtain permanent injunctive relief, plaintiff must also show: (1) that it will be immediately and irreparably injured; (2) that the public interest would be better served by the relief requested; and (3) that the balance of hardship on all the parties favors the protestor. See Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir. 1983); Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (standard for permanent injunction is essentially same as temporary injunctions, except actual success replaces need to show likelihood of success on merits).

An action at law only allows recovery of "bid preparation costs in a suit for damages, but not loss of anticipated profits," leaving a bid protestor irreparably harmed. Essex Electro Eng'rs, Inc. v. United States, 3 Cl.Ct. 277, 287 (1983), aff'd, 757 F.2d 247 (Fed.Cir. 1985); see also Keco Indus., Inc. v. United States, 203 Ct.Cl. 566, 575 n. 5, 492 F.2d 1200, 1204 n. 5 (1974) (acknowledging existence of a damages remedy sometimes rea-

---

15. In the context of the contentions regarding the mathematical calculation and the failure to credit plaintiff's status as an incumbent, plaintiff's argument may encompass its initial allegation that the agency's actions were arbitrary and capricious. Plaintiff does not make explicit this argument and does not indicate how these actions were arbitrary and capricious.

son for denial of injunctive relief in federal district court); *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1302 (D.C.Cir.1971) (holding that availability of damages, which do not include lost profits, does not warrant automatic dismissal of injunction regardless of strength of claim on merits). Plaintiff's showing satisfying this one factor for injunctive relief does not compensate for its inability to demonstrate the violation of an applicable procurement regulation.

Intervenor has proved beyond cavil that a bid protest pressed well into contract performance tips the scale in favor of the awardee. *See Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 846 n. 9 (D.C.Cir. 1982). Finally, the public interest is served by judicial review of a challenged protest, but not when the grounds for the protest are so unsubstantial as in this case. *See Grimberg,* 702 F.2d at 1371.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's and intervenor's motions for judgment upon the administrative record are granted.

2. Plaintiff's cross-motion for judgment upon the administrative record is denied.

3. There being no reason for delay, the Clerk of the Court shall enter judgment pursuant to RCFC 54(b) for defendant and intervenor as to plaintiff's claims regarding the procurements in Laredo, Texas; Greensboro, North Carolina; and Hattiesburg, Mississippi.

4. Plaintiff's protest regarding the Charleston, South Carolina procurement is dismissed without prejudice. Pursuant to ¶ 3 hereof, the Clerk of the Court shall enter judgment on this claim.

5. By June 4, 2004, plaintiff shall file a stipulation of voluntary dismissal of its protest regarding the Lexington, Kentucky procurement.

6. By June 4, 2004, the parties shall identify any protected/privileged material in brackets subject to deletion before the court issues its published opinion.