**BANNUM, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Dismas Charities, Inc., Defendant–Intervenor.**

No. 03–1751C.

United States Court of Federal Claims.

Jan. 18, 2006.

**312**

Kevin M. Cox, Auburn, NY, for plaintiff.

Jeffrey S. Pease, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Allison Kidd–Miller, Department of Justice, argued.

Alex D. Tomaszczuk, McLean, VA, for defendant-intervenor. Daniel S. Herzfeld, Shaw Pittman LLP, of counsel.

## OPINION

CHRISTINE O.C. MILLER, Judge.

Following remand by the United States Court of Appeals for the Federal Circuit, this post-award bid protest action is before the court after argument on the parties' cross-motions for judgment on the administrative record pursuant to RCFC 56.1(b)(1). *See Bannum, Inc. v. United States & Dismas Charities, Inc.,* 126 Fed.Appx. 958 (Fed.Cir. 2005) (unpubl.) (*"Bannum II"*), *rev'g and remanding Bannum, Inc. v. United States & Dismas Charities, Inc.,* 60 Fed.Cl. 718 (2004) (*"Bannum I"*). The order of remand called for further proceedings consistent with the decision of the Federal Circuit issued on the same date in a companion case, *see Bannum, Inc. v. United States,* 404 F.3d 1346 (Fed.Cir. 2005) (*"Bannum IV"*), *aff'g Bannum, Inc. v. United States,* No. 03–1284C (Fed.Cl. Aug. 7, 2003) (*"Bannum III"*) (entering judgment on Transcript of Proceedings at 76–84, *Bannum, Inc. v. United States,* No. 03–1284 (Fed.Cl. Aug. 6, 2003) (the "bench ruling")). Plaintiff's successful challenge to the review process for proposals for contracts administered by the Bureau of Prisons ("BOP") for Community Corrections Center ("CCC") services now calls for a determination of whether the violation of Federal Acquisition Regulation (FAR), 48 C.F.R. § 42.1503(b) (2000)-the failure to have the appropriate supervisory agency official undertake the review-would have affected, to a prejudicial extent, the scoring that had been assigned to plaintiff's proposal.

### FACTS

The background to this proceeding was chronicled in *Bannum I. See* 60 Fed.Cl. at 719–22. The pertinent facts are restated below.

From August 2001 to April 2002, the BOP issued three solicitations for CCC services, encompassing the supply of personnel, management, equipment, and supplies, among other essential services. Solicitation No. 200–0697–SE, issued August 6, 2001, sought CCC services for Hattiesburg, Mississippi ("Hattiesburg Solicitation"); Solicitation No.

200–0721–SC, issued January 11, 2002, requested CCC services for Laredo, Texas ("Laredo Solicitation"); and Solicitation No. 200–0743–MA, issued April 29, 2002, sought CCC services for Greensboro, North Carolina ("Greensboro Solicitation").

The solicitations provided that the bids would be evaluated with regard to the particular needs of the BOP and best value for price. As part of this analysis, the BOP looked to past performance, community relations, technical, management, and cost.[1] Each solicitation apportioned the greatest weight to past performance.

The BOP's past-performance analysis utilized a five-step review process. The procedure was to involve a "subjective assessment based on consideration of all relevant factors and circumstances" and noted that "offerors would be well served to be aware of possible dissatisfied customers and address the issues in initial proposal submissions." Laredo Solicitation, at § M.5 Factor I(b) "Past Performance," at 67; Hattiesburg Solicitation, at § M.5 Factor I(b) "Past Performance," at 75; Greensboro Solicitation, at § M.5 Factor I(b) "Past Performance," at 65–66.

As part of its response to the Laredo Solicitation, plaintiff provided Contractor Evaluation Forms ("CEFs") for certain current and prior BOP contracts. In *Bannum I* this court found incredible plaintiff's assertion that it submitted detailed rebuttals addressing all unfavorable comments contained in the CEFs, because plaintiff did "not cite to any page in the administrative record pertaining to the Laredo solicitation to substantiate its submission." *Bannum I*, 60 Fed.Cl. at 721. Following consideration of plaintiff's past performance, as well as the other evaluation factors, the BOP determined that intervenor's offer provided the best value and awarded the contract to Dismas Charities, Inc. ("Dismas" or "intervenor").

Almost the same scenario occurred with respect to both the Greensboro and Hattiesburg solicitations. *See Bannum I*, 60 Fed. Cl. at 721–22. For the solicitations plaintiff submitted select copies of CEFs, which it

claims—but cannot support—were accompanied by rebuttal comments. *See id.* at 722. The BOP determined that plaintiff's offers were not the best value for price and awarded the Greensboro and Hattiesburg contracts to Dismas.

**PROCEDURAL HISTORY**

Plaintiff filed suit in *Bannum I* on July 22, 2003, asserting that the BOP violated regulations concerning past performance evaluations when it awarded CCC contracts for Laredo, Hattiesburg, and Greensboro. Plaintiff argued that the FAR required that its CEFs and rebuttals be reviewed by a supervisory contracting officer ("SCO"), and that plaintiff was prejudiced when the reviewer was a management center administrator ("MCA").

Initially, plaintiff sought a judgment declaring that the BOP "acted arbitrarily, capriciously, and in violation of the law and terms of the subject [requests for proposals ("RFPs") ] in awarding the contracts protested herein," a temporary restraining order, a preliminary and permanent injunction, bid preparation costs, costs and attorneys' fees, and any other relief deemed proper. Compl. filed July 22, 2003, ¶¶ 11–12. When plaintiff did not pursue its requests for emergency and interim injunctive relief, defendant moved on September 22, 2003, for judgment on the administrative record. After requesting and receiving three enlargements of time, plaintiff ultimately cross-moved for judgment in its favor on January 29, 2004. Plaintiff requested award of contracts for CCC services in Laredo, Greensboro, and Hattiesburg; alternatively, plaintiff sought an order requiring the BOP to re-evaluate the proposals in accordance with the law on the ground that the awards were arbitrary, capricious, or in violation of the law. Plaintiff also requested its proposal preparation costs for the three RFPs.

*Bannum I* explored whether the decision of the BOP was "arbitrary, capricious, an abuse of discretion, or otherwise not in accor-

---

1. Except for the absence of "community relations" as a criterion for the Hattiesburg Solicitation, the list of factors was identical for all three.

The Laredo and Greensboro solicitations also noted that cost was less important than the other factors listed, when combined.

dance with the law[,]" 5 U.S.C. § 706(2)(A) (2000), pursuant to the test expressed by the Federal Circuit in *Banknote Corp. of Am. v. United States,* 365 F.3d 1345, 1351 (Fed.Cir. 2004). The required determination is " 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.' " *Id.* (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332–33 (Fed.Cir.2001)).

On May 24, 2004, this court issued its opinion in *Bannum I,* granting defendant's and intervenor's motions for judgment upon the administrative record and denying plaintiff's cross-motion.[2] The rejection of injunctive relief was based on two findings and conclusions: First, the evaluation process substantially complied with the applicable provision of the FAR, and, second, even assuming that a violation occurred, plaintiff did not establish any prejudice because, *inter alia,* its scores were not higher than those assigned to Dismas. *Bannum I,* 60 Fed.Cl. at 728–30.

In *Bannum II,* an April 29, 2005 unpublished decision, the Federal Circuit reversed this court's *Bannum I* ruling that the review conformed to regulation and remanded for additional proceedings consistent with the opinion issued in *Bannum IV. Bannum IV* affirmed an order entered upon a bench ruling by Sr. Judge Eric G. Bruggink that the evaluation process violated the FAR, but that plaintiff failed to protest the CEF evaluation procedures, *Bannum, Inc. v. United States,* No. 03–1284C (Fed.Cl. Aug. 7, 2003) ("*Bannum III* ") (entering judgment on Transcript of Proceedings at 76–84, *Bannum, Inc. v. United States,* No. 03–1284 (Fed.Cl. Aug. 6, 2003)). Following a status conference on August 25, 2005, and a scheduling order entered on August 26, 2005, plaintiff filed a motion for judgment on the administrative record. Defendant and intervenor cross-moved, and plaintiff replied on November 16, 2005.

## DISCUSSION

### 1. *The Federal Circuit's mandate*

The factual scenario of *Bannum III* mirrored that of the case at bar, *Bannum I.* On February 24, 2002, the BOP issued a solicitation for CCC services in Florence, South Carolina. *See Bannum IV,* 404 F.3d at 1349. The solicitation provided that the proposals also would be analyzed under a best-value methodology, encompassing a five-step approach that considered past performance, community relations, technical, management, and cost. Again, past performance was to be accorded the most weight.

As in this case, the RFP in *Bannum III* required bidders to submit CEFs and "further cautioned [that] 'offerors would be well served to be aware of possible dissatisfied customers and address the issues in initial proposal submissions.' " *Bannum IV,* 404 F.3d at 1349. Based on an incorrect assumption that the BOP would alter its CEF review process, plaintiff "identified 21 past contracts in its bid without mentioning *any* of its rebuttal letters or disagreement with existing CEFs." *Id.* at 1350. The BOP scored plaintiff's past performance based on 16 CEFs, and, upon its determination that plaintiff's bid did not represent the best value for price, awarded the contract to another bidder.

Plaintiff filed suit in *Bannum III* on May 28, 2003, requesting that the court set aside the Florence contract award and compel the BOP to re-evaluate plaintiff's bid. *See Bannum IV,* 404 F.3d at 1350. Plaintiff, defendant, and intervenor cross-moved for judgment on the administrative record, and, on August 6, 2003, Judge Bruggink ruled from the bench in favor of defendant.[3] Judge Bruggink determined that, although the BOP had violated both the FAR and the terms of the RFP when assigning weights to plaintiff's past contract performance, plaintiff had not been significantly prejudiced:

I think the Plaintiff has demonstrated two violations, one of the law and one of

2. Originally issued under seal, the opinion was redacted based on the parties' designations and reissued on June 8, 2004.

3. Final judgment was entered on August 7, 2003. *Bannum III,* No. 03–1284C.

the RFP, ... but I don't think that they're sufficient to set aside the award ....

There's a lot that the [BOP] did wrong I think in terms of its CEF process, and it's all I think attributable to the failure to follow the regulation, which I think is plain on its face.

....

But, I think that argument is—I can't use that to set aside the award here for several reasons. The RFP makes it plain that the CEFs are going to be used, and the Plaintiff was well familiar with that process in the past and certainly had every reason to know in his own notice what the regulations require ....

....

The RFP was very plain that the CEFs were going to be used, and any difficulties in past performance needed to be explained, so I think that's an independent reason not in terms of the legality of the process, but in terms of the substance of the comments that the Plaintiff should have included in its proposal any explanatory material.

The RFP does suggest that the review process is going to be subjective, but I don't think it's arbitrary or capricious to rely on the scoring in a uniform process by the people who actually supervise the contracts....

....

On the pricing, I think ultimately there's no prejudice there because if the [BOP] had scored the proposal with the absence of something that looked pretty essential, a 24/7 employee, I assume they would have scored down dramatically or perhaps even thrown out the competition or something.

....

Another item that was in the briefing but we didn't discuss here was the fact that the estimate Bannum knew to be low. I think that's something that both parties, [contract awardee] and Plaintiff, were sort of at a mutual disadvantage or advantage, and it really wouldn't be prejudicial to the Plaintiff.

....

I've considered other arguments, and I don't think any of them demonstrate a legal violation so I'm satisfied that there's no grounds [sic] here to set aside the award to [contract awardee].

Transcript of Proceedings at 76–82, *Bannum, Inc. v. United States*, No. 03–1284 (Fed.Cl. Aug. 6, 2003).

Thus, the trial courts in *Bannum I* and *Bannum III* reached different conclusions with respect to whether the review process violated the FAR. However, the parties concede that the import of this difference had no bearing, because the ultimate conclusions in *Bannum I* and *Bannum III* were the same: Plaintiff was not prejudiced by the scoring procedures and, therefore, was not entitled to a ruling in its favor. *Compare Bannum IV*, 404 F.3d at 1350 (affirming trial court determination that, irrespective of violations, plaintiff was not sufficiently prejudiced) *with Bannum I*, 60 Fed.Cl. at 730 (holding, alternatively, that, even if FAR had been violated, plaintiff was not prejudiced sufficiently).

The asymmetry between the treatment of plaintiff in *Bannum I* and the same plaintiff in *Bannum III* is inexplicable, and the parties found the Federal Circuit's mandate to be unclear.[4] Given that the opinion in *Ban-*

---

4. At a status conference held in *Bannum I* on August 25, 2005, the parties expressed concern with the situation on remand:

[Plaintiff's counsel]: In the other appeal involving Bannum, the one before Judge Bruggink, we have argued that well, if you give Bannum full credit on all those CEF forms then they would have been awarded the contract. The Federal Circuit wasn't impressed with that on the basis of speculation.

In our mind, the only way to try to show prejudice in this case would be for the BOP to identify the person and for us to perhaps take his deposition and confront them with the CEF forms, with Bannum's responses to those forms and then get some kind of a ruling from that person on what the correct score should be.

At that point we'd have the scores to add up and determine whether or not since we have been deprived of that review whether or not we were in fact prejudiced.

Transcript of Proceedings at 5, *Bannum, Inc. v. United States*, No. 03–1751C (Fed.Cl. Aug. 25, 2005).

[Defense counsel]: The factual finding of no prejudice or a determination of no prejudice was limited to a couple of sentences and so the

*num I* made an alternative ruling that plaintiff had not established the requisite prejudice due to any violation of the FAR, the parties could not explain why *Bannum I* was not affirmed on this alternate ground. The parties agree that, factually, this case is identical to *Bannum III:* The evaluation processes were the same; the scoring was similar; the solicitations, proposals, and evaluations occurred within months; the plaintiff and defendant were the same; counsel for plaintiff and intervenor were the same; and the arguments were the same. *See* Transcript of Proceedings at 5–6, 9, 22, *Bannum, Inc. v. United States,* No. 03–1751C (Fed.Cl. Jan. 5, 2005) ("Bannum I Jan. 2005 Tr."). This discomfiture is tempered in light of the well-established principle that the Federal Circuit " 'sit[s] to review judgments, not opinions.' " *Warner–Lambert Co. v. Teva Pharm. USA, Inc.,* 418 F.3d 1326, 1338 (Fed.Cir.2005) (quoting *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540 (Fed.Cir.1983)); *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1362 (Fed.Cir.2005) (same); *Gemstar–TV Guide Int'l, Inc. v. Int'l Trade Comm'n,* 383 F.3d 1352, 1381 (Fed.Cir.2004) (same); *Int'l Rectifier Corp. v. Samsung Elec. Co.,* 361 F.3d 1355, 1359 n. 1 (Fed.Cir. 2004) (same). Therefore, the Federal Circuit apparently affirmed *Bannum III's* prejudice determination based on the record, not the opinion.

Defendant argues that from "what [it] could glean from the Federal Circuit decision . . . the Court should, based on the administrative record[,] . . . make findings of fact and make a determination on prejudice."

only—what I could glean from the Federal Circuit decision basically was that the Court should, based on the administrative record as it was in that case, make findings of fact and make a determination on prejudice.
*Id.* at 8. The parties' briefing did not assuage their concerns about how to approach the mandate, as reflected during oral argument, held on January 5, 2005:
    [Plaintiff's counsel]: I'm not sure what the best way to proceed is, but I share in the Court's opinion that I think the Federal Circuit wanted us to do something. So that being said, we kind of approached this in the best way we could figure out.
Transcript of Proceedings at 8, *Bannum, Inc. v. United States,* No. 03–1751C (Fed.Cl. Jan. 5, 2005). Plaintiff's counsel continued to state,

Transcript of Proceedings at 12, *Bannum, Inc. v. United States,* No. 03–1751C (Fed.Cl. Aug. 25, 2005) ("*Bannum I* Aug. 2005 Tr."); *see also Bannum I* Jan. 2005 Tr. at 12.[5] In support of this assertion, defendant notes that the administrative record contains the justifications for the CEF scores that the BOP gave to plaintiff, including a failure to alert the BOP of an escaped prisoner in a timely manner. Def.'s Br. filed Nov. 9, 2005, at 9–12. In contrast, plaintiff contends that the Federal Circuit's determination that the BOP perpetrated a violation of law requires this court to order review of plaintiff's CEF forms by the SCO in order to determine whether prejudice did occur. *See Bannum I* Aug. 2005 Tr. at 5 (quoted *supra* note 4). Although plaintiff submits that the court should order the appropriate SCO to appear for deposition to explain and justify the scoring, plaintiff also stated that it would not view a remand to the agency for rescoring as inappropriate. To show how this should and would be done, plaintiff recalculated the disputed CEF scores based on the information held in its own rebuttal letters. Pl.'s Br. filed Oct. 17, 2005, at 5–10.

The Federal Circuit has determined that the BOP committed an error during the procurement process when it failed to conduct a review at the SCO level to address disagreements between parties with respect to the evaluation. *Bannum IV,* 404 F.3d at 1351 (rejecting *Bannum I* holding that FAR provision is substantially satisfied by third-party review of disagreements, even where third party is not a direct supervisor or contract officer). Because plaintiff established a vio-

"we're kind of wracking our brains . . . to try to figure out what to do here . . . ." *Id.* at 17.
    Counsel for intervenor expressed a similar sentiment:
      Let me say that I recognize the extent to which this Court dutifully and diligently tries to follow the Federal Circuit's mandate, and I can say that in this case both I and my able associate here have struggled with the Federal Circuit's decision, and the basis for distinguishing the Florence case from the three contracts that are at issue here.
*Id.* at 18–19.

**5.** Intervenor agreed that this approach would be appropriate. *Bannum I* Jan. 2005 Tr. at 15–16.

lation of law for each of the three BOP reviews involved in *Bannum I*, the charge of this court is to ascertain whether the errors resulted in significant prejudice. *See id.* at 1351 ("The trial court was required to determine whether these errors in the procurement process significantly prejudiced Bannum."); *see also Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir.1999); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed.Cir.1996).

### 2. *Determination of prejudice*

█ Prejudice is a question of fact. *Bannum IV*, 404 F.3d at 1353; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed.Cir.2000). Where a violation of an applicable procurement regulation or procedure has occurred, a protestor establishes prejudice by evidencing a substantial chance that, absent the error, it would have been awarded the contract. *Bannum IV*, 404 F.3d at 1353; *Banknote Corp. of Am.*, 365 F.3d at 1351; see also *Alfa Laval Separation*, 175 F.3d at 1367 (holding that in order to show prejudice, plaintiff need only show " 'that it was within the zone of active consideration' ") (quoting *CACI, Inc.—Fed. v. United States*, 719 F.2d 1567, 1574–75 (Fed. Cir.1983)).

█ As part of its factual proffer before Judge Bruggink in *Bannum III*, plaintiff "necessarily rel[ied] on the difference between the . . . points the BOP docked it based on the CEFs, and the . . . points by which" the contract was won. *Bannum IV*, 404 F.3d at 1358. The BOP deducted 104 points from plaintiff based on its CEFs, while Dismas outscored it by 74.5 points. Therefore, if the BOP had deducted fewer than 29.5 points for past performance, plaintiff would have been awarded the Florence contract. *Id.* at 1358. While the bench rul-

ing does not discuss point spreads, this court's ruling in *Bannum I* specified them for each contract.[6] 60 Fed.Cl. at 721 (Laredo); *id.* (Greensboro); *id.* at 722 (Hattiesburg).

In its motion for judgment on remand, plaintiff argues that, if the BOP had acted in conformity with the FAR, plaintiff would have been awarded the contracts. According to plaintiff, when its CEF scores are adjusted to include the point increases requested in its rebuttal letters, plaintiff's past-performance scores surpass those of intervenor on all three contracts. Using the same calculation, plaintiff also trumps intervenor on total points on the Laredo and Hattiesburg contracts. Pl.'s Br. filed Oct. 17, 2005, at 2.

However, the Federal Circuit rejected precisely this argument in Bannum IV. It ultimately concluded that the discrepancy between points that the BOP reduced and the points by which the awardee won the bid could not be the basis of prejudice because "neither Bannum nor the record explains why Bannum had a substantial chance of scoring at least 74.5 points higher on past performance . . . ." *Bannum IV*, 404 F.3d at 1358. It found that "Bannum's argument rests on mere numerical possibility, not evidence." *Id.*

Plaintiff on remand also faults the BOP for failing to consider its rebuttals to the CEFs, so that the CEFs would be subject to rescoring on remand. Again, the Federal Circuit already rejected that approach in *Bannum IV*, spurning plaintiff's attempt "to litigate CEF disputes" in a bid protest.[7] *Id.* at 1353.

The findings that appear in the court's published opinion in *Bannum IV* support the finding and conclusion in *Bannum I*: "[P]laintiff . . . did not establish the existence of any prejudice, even assuming *arguendo*

---

6. The parties requested that the scores be redacted in the published *Bannum I* opinion, but they appear in the official opinion on file.

7. This court rejected on the identical ground plaintiff's argument in *Bannum I*:

> While the challenges to the terms of the solicitation are appropriate only prior to submission of final proposals, challenges to the evaluation may be raised after final proposal submission. Plaintiff characterizes its bid pro-

test as a challenge implicating the evaluation process, but, upon closer examination, plaintiff is contesting the BOP's formation and maintenance of plaintiff's files containing CEFs upon completion of plaintiff's prior contracts. Plaintiff's complaint more resembles the challenge of a solicitation term than the challenge of the evaluation process.

60 Fed.Cl. at 727.

that a violation occurred." 60 Fed.Cl. at 730 (making such ruling only after (1) scrutinizing and comparing the points awarded to plaintiff and intervenor, (2) discrediting the hypotheticalness of plaintiff's position, and (3) rejecting plaintiff's attempt to litigate CEF disputes). Having already conducted an in-depth factual analysis of the scores and determined a lack of prejudice in *Bannum I*, this court is of the view that remanding this matter to the agency, the alternative presented to the court, disserves the interests of justice, constitutes a substantial drain on the parties' resources, and is not in accordance with the Federal Circuit's mandate.

This court has considered and rejects the option of remanding, pursuant to RCFC 56.2, to the BOP for rescoring by an official at a level above the contracting officer. Work on the Hattiesburg, Laredo, and Greensboro contracts commenced in 2003. Bannum I, 60 Fed.Cl. at 721, 722; Bannum I Jan. 2005 Tr. at 24. In the 2004 opinion, *Bannum I* noted the hardships associated with disrupting contract performance so long underway. 60 Fed.Cl. at 731. The passage of time has reinforced this court's finding because contract performance has continued. Even plaintiff acknowledges that a remand to the BOP, at this juncture, is beyond the realm of logic and fairness. *See* Pl.'s Br. filed Oct. 17, 2005, at 4–5 ("Since Bannum was deprived of a review of the CEFs and rebuttals by a BOP official 'at a level above the contracting officer,' [plaintiff's own recalculation of its past performance scores] is the *only* logical and fair way to determine prejudice in this case." (emphasis added)).

Defendant urges the court to conduct its own review of the scoring and to conclude that "any CEF reviewer would be justified in coming to [the same] conclusions and would be likely to do so ...." Def.'s Br. filed Nov. 9, 2005, at 9. Intervenor concurs that this approach would satisfy the mandate. Based on the administrative record, defendant has made the review that both it and intervenor ask this court to endorse. The difficulty is that the court cannot sit as a "super SCO." Either the administrative record displays a disparity in scoring that plaintiff could not overcome on remand, or it does not, which

would require an evaluation of the quality of the proposals. Judge Bruggink did not undertake this evaluation, nor did the reviewing court in *Bannum IV*. Both this court and *Bannum III* have found that several considerations militated against a finding of prejudice. *Cf. Alfa Laval*, 175 F.3d at 1368 (reversing judgment based solely on finding that price differential was too great to warrant prejudice).

### 3. *Injunctive relief*

Because plaintiff cannot show that it was significantly prejudiced, it cannot prevail on the merits of its claim. In addition to prevailing on the merits, in order to obtain permanent injunctive relief, plaintiff must show: (1) that it will be immediately and irreparably injured; (2) that the public interest would be better served by the relief sought; and (3) that the balance of the hardships tips in favor of the plaintiff. *Bannum I*, 60 Fed.Cl. at 730; *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983). While this court again acknowledges that plaintiff has shown the presence of an immediate and irreparable injury, *Bannum I*, 60 Fed.Cl. at 730–31, plaintiff cannot obtain injunctive relief based upon the satisfaction of this single factor. "Intervenor has proved beyond cavil that a bid protest pressed well into contract performance tips the scale in favor of the awardee." *Id.* at 731; *see also Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 846 n. 9 (D.C.Cir.1982). Finally, the public interest is served by having the BOP observe applicable procurement regulations in conducting its reviews, but not, based on the spread in the scores, when plaintiff cannot demonstrate that a potential change in scoring would make a difference. *See Bannum I*, 60 Fed.Cl. at 731; *see also United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1371 (Fed.Cir.1983).

### CONCLUSION

Accordingly, based on the foregoing, plaintiff has failed to prove that the violation of the applicable procurement regulation preju-

diced it. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**